89 N.J. Super. 502 (1965)
215 A.2d 571
LUCY BLEEKER AND CHESTER BLEEKER, PLAINTIFFS-APPELLANTS,
v.
JOSEPH TRICKOLO, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 22, 1965.
Decided December 16, 1965.
*504 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Seymour Gelzer argued the cause for appellants (Messrs. Marcus & Levy, attorneys, Mr. Harry C. Chashin, of counsel).
Mr. Samuel Doan argued the cause for respondent Trickolo (Messrs. Stalter, Doan & DeYoe, attorneys; Mr. Samuel Doan, of counsel).
Mr. John I. Lisowski argued the cause for respondent Magilton (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
*505 The opinion of the court was delivered by FOLEY, J.A.D.
Lucy Bleeker was a passenger in an automobile operated by her daughter Anna Magilton when it was in collision with an automobile owned and operated by Trickolo. As a result she brought this action against Magilton and Trickolo for personal injuries; her husband Chester sued per quod.
The accident occurred in the early afternoon of February 9, 1961 on Nagle Street, Paterson, N.J. On the day before there had been a sizeable snowstorm, and the subsequent snow plowing of the street had reduced the travelled portion to one lane and had caused large banks of snow to be piled on both sides of the lane. Trickolo resided on Nagle Street two doors from Glover Avenue, an intersecting street. He had cleared the snow bank for a sufficient area to enable him to park his automobile. The car was parked in such a manner that it was necessary for him to back it into the road of travel. Immediately prior to the accident Trickolo got into his car, looked back and then front, and seeing no vehicle, started to back his car. When he had travelled about one foot he heard a horn, put on his brakes and stopped. He then found that his left rear fender had come in contact with the Magilton car as it attempted to pass. That car had turned into Nagle Street from Glover Avenue. It was readily inferable that the narrow roadway and the piles of snow (said to be three feet high) contributed to the hazards involving both automobilists.
At the conclusion of the entire case plaintiffs moved for a judgment of liability against Trickolo. The court denied the motion. The court submitted the case to the jury together with a written interrogatory annexed to forms of possible verdicts, which was as follows:
"If you find a verdict of no cause for action against both defendants then answer the following special question: What is the amount of damages you would have awarded to plaintiffs if there had been a verdict in favor of plaintiffs?"
In the course of the charge the jury was informed by the judge that he intended to submit this interrogatory for his *506 own "information." Trickolo's attorney objected to the submission of the interrogatory; plaintiff's attorney did not. The jury returned a general verdict of no cause of action as to both defendants, and in respect to the interrogatory stated that the damages it would have awarded were $250 for Lucy Bleeker and $150 for Chester Bleeker.
Plaintiff moved for a new trial. After argument the trial court denied the motion as to Magilton. However, acting under R.R. 4:51-2(b) the court granted plaintiffs' trial motion for a judgment of liability as to Trickolo. Having done so, the judge then entered judgments in favor of the plaintiffs respectively for $250 and $150 upon the basis of the "information" supplied by the jury in respect to the requested special finding.
Plaintiffs appeal, alleging that the interrogatory as to damages was unauthorized and that the jury's answer thereto was erroneously made the basis of the judgment entered in their favor on the post-trial proceedings. They also contend that the court erred in denying their motion for a new trial and, further, that under R.R. 4:51-2(b) a determination of that motion as to Trickolo was required, notwithstanding the fact that the court granted their motion holding him liable as a matter of law. Trickolo does not cross-appeal.
R.R. 4:50-2 is derived from, and is identical with, Rule 49(b) of the Federal Rules of Civil Procedure. It provides:
"General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent *507 with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."

Compare R.R. 4:50-1, and its counterpart Rule 49(a) of the Federal Rules of Civil Procedure.

The tentative draft comment on Rule 3:49-2 (now R.R. 4:50-2) is that "the object of submitting a case to a jury for a general verdict with written interrogatories is to secure some check on the accuracy of the general verdict." (Emphasis added) 2 Waltzinger, N.J. Practice (rev. ed. 1954), p. 471. See 5 Moore's Federal Practice (2d ed. 1964), § 49.04, p. 2209.
Plaintiffs argue, in effect, that the use by the trial judge of the answer to the interrogatory infringed their right to a jury trial (on the issue of damages) guaranteed by the N.J. Const. 1947, Art. I, par. 9. At the heart of this contention lies the proposition that the jury, having found no cause of action as to either defendant, had no occasion to decide the issue of damages, and thus its answer to the question for the "court's information" was purely advisory rather than decisional. We need not pass upon the constitutional question.
Plaintiffs also argue that the "special question" was unauthorized by R.R. 4:50-2. We agree, and, as previously noted, Trickolo's attorney took the same position when the trial court indicated its intention to pose the question.
By its terms the rule expresses the purpose of its drafters, as above noted. As distinguished from R.R. 4:50-1 (special verdicts), it is directly beamed toward a determination of the factual hypothesis upon which a general verdict is based. Thus, R.R. 4:50-2 permits written interrogatories upon one or more issues of fact, the decision of which is necessary to a verdict. The verdict referred to is the jury's verdict  not the "verdict" of the judge upon either a motion for a new trial or a motion for judgment. Under R.R. 4:50-2 the function of the trial judge in relation to the verdict returned by the jury is to decide whether or not the special *508 findings of the jury are harmonious with the general verdict in light of the issues of fact which were submitted to it and the determination of which was necessary to such verdict. If the answers to the special questions and the general verdict are harmonious, judgment is entered accordingly. If not, or if the answers are inconsistent within themselves, the court may return the jury for further consideration of its answers and the verdict, or may order a new trial.
The entire cast of R.R. 4:50-2 is such as to preclude the idea that any question and answer other than one necessary to explain the general verdict may be submitted to the jury, or that an answer, even in a proper case, remains viable after the verdict (except, of course, for the review of its consistency with the general verdict).
No cases are cited us which are either pro or con this thesis, and our own research of authorities in this jurisdiction, and the more numerous cases in the federal jurisdictions interpreting Rule 49(b), likewise has revealed none. See 5 Moore's Federal Practice, supra, § 49.04, and citations therein. See also 74 Yale L.J. 483 (1965). Therefore, we conclude that however well the interrogatory and answer thereto herein involved might have served the purposes of R.R. 4:51-2 (judgment n.o.v.), it was not within the ambit of R.R. 4:50-2, supra, and that the answer in question could not subsequently be employed by the judge to fix plaintiffs' damages and enter judgment thereon.
We find no merit whatever in plaintiffs' claim that the court erred in denying their motion for a new trial as to defendant Magilton. Plainly, a fair jury question was presented as to that defendant's negligence. The denial of the motion was therefore authorized, if not required by Hager v. Weber, 7 N.J. 201 (1951), and the trial court's decision will not be disturbed by this court. See Kulbacki v. Sobchinsky, 38 N.J. 435 (1962).
While it is true, as plaintiffs contend, that R.R. 4:51-2 requires that the trial judge in granting a motion for judgment shall nevertheless rule on a motion for new trial, and *509 determine whether it should be granted in case the judgment shall thereafter be vacated or reversed, R.R. 4:51-2(b), the alleged failure of the judge to do so as to Trickolo, in the circumstances presented, was harmless. In granting plaintiffs' motion for a judgment of Trickolo's liability as a matter of law, plaintiffs obviously received more than they would have had they been granted a new trial on this issue against Trickolo. They now have a judgment in their favor on the issue of Trickolo's liability which has not been attacked by him on this appeal, and cannot hereafter be challenged.
The judgment in favor of Magilton is affirmed with costs. The judgment against Trickolo is reversed with costs, and the case, as to that defendant, is remanded for a new trial as to damages only.