189 N.J. Super. 50 (1983)
458 A.2d 1290
ROBERT JOHNSON, JR., PLAINTIFF-RESPONDENT,
v.
SALEM CORPORATION, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1983.
Decided March 14, 1983.
*53 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Robert F. Colquhoun argued the cause for appellants (Colquhoun & Colquhoun, attorneys).
Alan Y. Medvin argued the cause for respondent (Horowitz, Bross, Sinins, Imperial and Medvin, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
This is a products liability case arising out of an industrial accident in which plaintiff Robert Johnson, Jr., sustained a serious injury of his right hand when it was caught in the rollers of the scrap baling machine he was operating. The jury returned a verdict of no cause for action and, following the judge's charge, also returned a damages verdict of $275,000. Having reserved on plaintiff's motion made at the close of the evidence for a judgment of liability, the judge thereupon entered judgment n.o.v. in plaintiff's favor on liability and accepted the jury's damage verdict. Defendant appeals.
The first of the questions raised by this appeal is the sustainability of the judgment n.o.v. In considering this issue we are aware that the standard for granting a judgment n.o.v. is relatively mechanical and does not involve the weighing of evidence. Thus, it may only be granted if, accepting as true all of the evidence supporting the position of the party resisting it and according that party the benefit of all legitimate inferences deducible therefrom, reasonable minds could not differ on the resolution of the issue. See, e.g., Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). See, also, Finnegan v. Havir Mfg. Corp., 60 N.J. 413, 421 (1972); Sabloff v. Yamaha Motor Co., Ltd., 113 N.J. Super. 279, 281 (App.Div. 1971), aff'd o.b. 59 N.J. 365 (1971); Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964). We are also aware *54 that where a question of credibility is involved, the fact that proofs are undisputed does not alone warrant the grant of a motion for judgment or a subsequent judgment n.o.v. since the trier of fact remains free to reject those proofs on credibility grounds. See Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482 (1956). And we are, finally, also aware that R. 4:40-2(a) expressly authorizes the trial judge, after reservation on the motion for judgment, to order a new trial in the interests of justice in lieu of granting judgment n.o.v.
It is, therefore, the rare contested personal injury case in which either a motion for judgment or a subsequent judgment n.o.v. would be appropriate since in most negligence cases there customarily is, if we put aside questions as to the weight of evidence, sufficient factual dispute to justify the conclusion that reasonable minds might differ. It is also apparent that in such cases the propriety of the grant of a motion for judgment in plaintiff's favor would be an even rarer phenomenon than the grant of the motion in favor of defendant. Nevertheless, there may from time to time be a plaintiff's case which, in the context of the evidence as a whole, is so plainly unrefuted and in which questions of credibility are so clearly not implicated as to warrant the concededly extraordinary action of a judgment n.o.v. in plaintiff's favor. We are satisfied that this is just such a case and that there is accordingly no justifiable basis on which to impose upon the parties or the court system the burden and expense of a new liability trial.
The single liability issue here was that of product defect. Thus, following the principles of Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 168 (1979), the judge correctly charged the jury that plaintiff was entitled to a liability verdict if he proved that the scrap baling machine, as manufactured and designed by defendant, was not reasonably fit, suitable and safe for its intended purpose, that at the time of the accident plaintiff was using the product for its intended *55 purpose, and that the defect proximately caused the injury. Defendant agreed that the charge comported with Suter.[1]
According to the undisputed facts, plaintiff was the operator of a scrap baling machine designed and manufactured by defendant in the mid-1950s. Its function was to convert long narrow strips of scrap aluminum into compacted bales. This process was initially performed by passing the strips between two rollers having a point of contact known as a "nip." Since there was an automatic feeding device, the only necessary contact which the operator had with the rollers or their immediate vicinity was when he initially "threaded" the strip into the machine or when he had to twist together the ends of different strips or broken strips. These procedures were obviously performed when the machine was not running. The machine itself, and hence the action of the rollers, was activated by one of the only two buttons with which the machine was equipped, a forward button and a reverse button. The machine was stopped by means of a stop bar. The design of the machine was such that the stop bar did not constitute a fail-safe stopping device. Thus, even after the stop bar had been employed to stop the machine, it was nevertheless subject to accidental start-up either by reason of a particularly located power surge or other electrical phenomenon, or an inadvertent pushing of an activating button or a malfunction of the stop bar itself.
The accident here occurred when plaintiff was obliged to twist two strip ends together. He had first pushed the stop bar to stop the machine and, as he was preparing the "feed," the machine accidentally started up, catching his hand between the rollers. The machine again stopped when he hit the stop bar with his head while trying to extricate his hand. It was plaintiff's further testimony that the stop bar had been malfunctioning *56 for some time in that it would occasionally slip down and the machine would start without being intentionally reactivated. He complained of this malfunction to his foreman but to no avail.
Plaintiff's expert was of the view that the machine was not safe because it was not designed to prevent an accidental start-up at the critical time when the operator's hand was vulnerable to the rollers. It was his opinion that that vulnerability could be completely avoided by a variety of techniques, the simplest and most obvious being a guard equipped with an interlock device that would function in a lid-like apparatus. The raising of the lid would both expose the rollers so that the material could be fed in and would also activate the interlock, thereby absolutely preventing the machine from running until the lid was manually lowered. The expert further explained that such an interlock device has been in use for more than 50 years and is commonly used not only in industrial machinery but also in household appliances.
The only proof submitted by defendant to counter liability was the testimony of its expert. His criticism of the interlocklid-guard device was, beyond the remotest doubt, based upon his misunderstanding of its concept since he expressed the view that its incorporation as an element of the machine would make access to the rollers impossible and thus make it impossible for the operator to thread the material into the machine. Beyond that, he conceded that the stop bar did not prevent the foreseeable phenomenon of accidental start-up. He nevertheless expressed the "net opinion" that the machine as designed and manufactured was reasonably fit for its intended use.
It is evident that defendant's expert testimony was of no value whatsoever except insofar as it supported the opinion of plaintiff's expert. Reasonable minds could not differ as to the fallacy of his criticism of the guard plaintiff's expert had described. Moreover, his net opinion, unsupported by any factual evidence, was inadmissible. See Buckelew v. Grossbard, 87 *57 N.J. 512 (1981). In effect then, and as correctly concluded by the trial judge, the proof situation was actually one in which plaintiff's proofs were undisputed.
In considering those proofs and applying thereto a risk-utility analysis, the trial judge further concluded, on the plaintiff's motion for judgment, that
And insofar as there may be a risk utility analysis function that I have to perform in this case, I will rule right now that there is no risk utility that would bar the application of a safety device as described by the plaintiff's witness. Absolutely none. And so that which he described as an alternate safety device, I rule would not be either too expensive or render this machine inoperable for the purpose for which it was designed. And so, it is an entirely appropriate and viable type of device to apply to the machine. So, you do not have any risk utility feature in this case.
Despite the judge's strongly expressed inclination to grant plaintiff's motion, he nevertheless opted to reserve thereon and to submit the liability question to the jury for all the reasons which make that course the better part of valor. He was, however, evidently shocked by the jury's no-cause conclusion and, having reserved on plaintiff's motion, promptly granted the judgment n.o.v., explaining as follows:
I am going to set aside a jury verdict and enter a motion on behalf of the plaintiff, notwithstanding a verdict by the defendant's own admission the concept of point guarding was known as far back as 1913. They conceded that accidents can occur for many reasons, because of the start up without the unintentional start up. It is foreseeable in the design of the machine that it may start up on its own, unintentionally.
It is also foreseeable that in the operation of this particular machine it would require the hands of the operator into the danger zone. And if there was an accidental start up with the hands in the working area, then the worker would be injured.
It is conceded there was no guard to protect against the accidental start up of this machine; and that the defendant did nothing to protect against the accidental start up. Admittedly it was a dangerous machine.
While they testified that this machine was reasonably fit, suitable and safe, that is nothing more than a net opinion. He said that the safeguards on the machine were a stop bar, and a stop button.
As it turns out he was incorrect. There was no stop button on the machine. There was a start up button for the reverse or forward, but there was no stop button. The only stop mechanism was the stop bar itself, which in this case was defective and caused the machine to start up once it had started.

*58 That is the very purpose for which the type of design guard that Mr. Howarth testified to should be put on this particular machine, to avoid against this eventuality.
I found already as a matter of law that the risk utility analysis did not apply in this case; or if it did apply, there was a specific finding that the guard could be placed on that with an inexpensive cost, and without rendering the machine unfit for its intended purpose.
So notwithstanding the jury's verdict, I will enter a verdict in favor of the plaintiff.
We are satisfied that this determination was correct. As a matter of simple and straightforward product liability law, an industrial machine is not reasonably fit and safe for its intended use where it is designed and manufactured in such a manner as to pose a foreseeable and serious risk of physical injury to a worker using it for its intended purpose and in the prescribed manner and where, moreover, that risk is easily, feasibly and economically avoidable. See, generally, Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 169. And see, generally, 2 Restatement, Torts 2d, § 402A and Comments thereon at 347-358 (1965). In our view, reasonable minds could not, on this record, have differed in concluding that the scrap baling machine here failed to meet this standard of reasonableness fitness for use.
We have no doubt that an exercise in intellectual creativity wouldus hypotheses which might explain the jury's rejection of liability here. But we are also persuaded that none of these hypotheses would be reasonable. In this posture, insisting on a new trial on liability would result in what we are convinced would be a wanton waste of private and public resources.
Unfortunately, however, we are constrained to conclude that a new trial in respect of damages is unavoidable. It was our holding in Bleeker v. Trickolo, 89 N.J. Super. 502 (App.Div. 1965), that a damages verdict accompanying a no cause for action is not reliable. We adhere to that view for the reasons therein stated. Plaintiff argues that Bleeker was in effect overruled by Roman v. Mitchell, 82 N.J. 336 (1980), which dealt with the form of comparative negligence verdicts. Noting that *59 the comparative negligence statute, N.J.S.A. 2A:15-5.1 et seq., 2A:15-5.2, requires the jury to find damages irrespective of its allocation of negligence among the parties, the court concluded that the jury could most fairly perform that task by being instructed as to the circumstances, in the context of percentages of negligence, in which plaintiff would recover at all. This concept of the ultimate outcome charge was intended to prevent the jury from speculating as to the legal effect of its damages verdict. We do not believe that there is any congruent basis for speculation in the situation, such as here, where the jury is asked to address only two questions: defendant's liability and damages. Surely, a juror of ordinary common intelligence cannot but realize that if the liability verdict is a "no cause," plaintiff will not recover irrespective of what it had concluded would be appropriate damages. We are constrained to conclude, therefore, that there must be a new trial as to damages.
We do, however, appreciate the validity of the judge's concern for attempting to avoid a second trial. We are of the view that there are available techniques for effectively dealing with this concern. Thus, in the future if a trial judge has reserved decision on a plaintiff's motion for judgment on liability, he should bifurcate the jury's consideration of liability and damages by first charging only as to liability and instructing the jury to return its verdict on that issue alone. If the jury returns a verdict in plaintiff's favor or if the judge enters a judgment n.o.v. on the jury's no cause, he can then, with appropriate explanations, charge as to damages and send the jury back to deliberate on that issue. The consequent damages verdict would thus be spared the "advisory only" taint of Bleeker and a new trial thereby avoided.
Defendant raises various other issues having to do with the integrity and propriety of the damages verdict. Since there will have to be a new trial on damages, we need not reach those issues. We do note, however, that in our view there is no merit in defendant's contention that the summation of plaintiff's counsel violated the precepts of either Cox v. The Valley Fair *60 Corp., 83 N.J. 381 (1980) or Botta v. Brunner, 26 N.J. 82 (1958). In any event, the mandate of those cases have since been clarified and modified by the September 1982 adoption of R. 1:7-1(b), which specifically authorizes the use of time-unit arguments in summations addressing unliquidated damages.
There is, however, one final matter upon which we are constrained to comment. Without leave applied for or granted, defendant's attorney expanded the record on appeal by submitting to us his own affidavit impunging the trial judge's impartiality. The factual basis of this affidavit was the allegation that some 30 years ago the affiant and the trial judge were employed by the same law firm as either law clerks or newly admitted attorneys. It then came to the affiant's attention that some of his colleague's fingers had been injured and he was told that the injury "had happened in a machine shop." It is the affiant's suggestion that the judge was obliged to disclose that injury "to the trial counsel for defendant to provide the opportunity to evaluate a request to the Court to disqualify itself from sitting on this case."[2]
We suppress the affidavit since the required leave for expanding the record on appeal was not sought. We also suppress the affidavit because its contents are irrelevant, if not indeed scurrilous. Contrary to defendant's intimations, we find nothing in this record which remotely suggests that the trial judge was prejudiced against defendant in any way. A judge ordinarily is not disqualifiable because of his own life experiences. Obviously a judge is not disqualified from presiding at an automobile accident trial merely because he was once himself in an automobile accident. Nor is a judge disqualified from trying a divorce case either because he is himself married or divorced, or from trying a contested adoption case because he has either natural children or adopted children. The point, of course, is that each *61 of us is a product of the aggregate of our experiences, and our understanding is enhanced by the totality of our experiences. There may, of course, be a specific situation which would render it appropriate for a judge to recuse himself in a particular case. See, e.g., R. 1:12-1(f). This obviously was not such a situation.
The judgment of liability n.o.v. is affirmed. The acceptance of the jury's damages verdict is reversed and the matter is remanded for a new trial on damages only.
NOTES
[1] It did object on the basis that no comparative negligence charge was given. Suter, however, makes clear that in the context of this industrial accident defendant is not entitled to such a charge and no such issue is raised by defendant on appeal.
[2] Defendant has been represented by the same firm throughout. Appellate counsel, the affiant, did not, however, try the case in the Law Division.