215 N.J. Super. 98 (1987)
521 A.2d 364
EDWARD BURDZY AND KRISTINE BURDZY, PLAINTIFFS-APPELLANTS,
v.
LOUISE COONEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 1987.
Decided February 4, 1987.
*100 Before Judges MICHELS and O'BRIEN.
Howard Duff argued the cause for appellants (Reed, Strauss & Tauriello, attorneys; Robert B. Reed, of counsel; Howard Duff, on the brief).
Joseph H. Burns argued the cause for respondent (Edward R. Martin, attorney; Joseph H. Burns, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Edward Burdzy and Christine Burdzy appeal from a judgment of the Law Division entered in favor of defendant Louise Cooney on a molded jury verdict in this personal injury automobile negligence action.
The proofs essential to resolve the issues raised on this appeal are not in dispute. The accident occurred at the intersection of Routes 165 and 29 in Lambertville, New Jersey. Plaintiff Edward Burdzy was travelling south on Route 165 and defendant was travelling south on Route 29. Route 29 is controlled by a yield sign where it merges with the southbound lanes of Route 165. Thus, traffic travelling south on Route 29 is required to yield before entering the flow of southbound traffic on Route 165. A short distance further south on Route 165, beyond the point where the southbound lanes of that highway merge with Route 29, there is a break or cut out in the median of Route 165 through which drivers heading south may make a U-type turn in order to change direction and head north on Route 165.
Defendant, who was travelling south on Route 29, slowed down but did not stop at the yield sign before entering Route 165 South. She intended to proceed across both southbound lanes of Route 165 to the cut out in the median and then turn *101 onto Route 165 heading north. However, before plaintiff reached the break in the median, the accident occurred.
Plaintiff Edward Burdzy instituted this action to recover damages for the personal injuries he sustained as a result of the accident. His wife sued per quod. At the conclusion of the trial, the jury found plaintiff Edward Burdzy 81.6% negligent, defendant 18.4% negligent and assessed damages at $21,667.00 and $0, for Edward Burdzy and his wife, respectively. The trial court, pursuant to N.J.S.A. 2A:15-5.2.c, molded the verdict and entered a judgment of no cause for action in favor of defendant. Plaintiffs' motion for a new trial was denied and this appeal followed.
Plaintiffs seek a reversal and a remand for a new trial as to both liability and damages. They contend that the trial court erred (1) in instructing the jury with respect to both N.J.S.A. 39:4-144 and N.J.S.A. 39:4-90 because the intersection was governed by a yield sign and (2) in failing to instruct the jury as to the standard of care required when making a U-turn.

I.
The trial court committed reversible error in charging portions of both N.J.S.A. 39:4-144 and N.J.S.A. 39:4-90. N.J.S.A. 39:4-90, concerning the right of way at intersections, provides in part:
The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection....
The driver of a vehicle within an intersection intending to turn to the left shall yield to a vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but the driver having so yielded, and having given a signal when and as required by law, may make the left turn; and other vehicles approaching the intersection from the opposite direction shall yield to the driver making the left turn.
N.J.S.A. 39:4-144, concerning stopping or yielding the right of way before entering stop or yield intersections, provides in part:
... No driver of a vehicle or street car shall enter upon or cross an intersecting street marked with a "yield right of way" sign without first slowing to a reasonable speed for existing conditions and visibility, stopping if necessary, and the driver shall yield the right of way to all traffic on the *102 intersecting street which is so close as to constitute an immediate hazard; unless, in either case, he is otherwise directed to proceed by a traffic or police officer or traffic control signal, or as provided in section 39:4-145 of this Title.
It is perfectly clear that N.J.S.A. 39:4-90 does not apply to establish a standard of care at an intersection where, as here, the traffic is controlled by a yield sign. Cf. Beck v. Washington, 149 N.J. Super. 569, 573 (App.Div. 1977); DePolo v. Caplan, 119 N.J. Super. 56, 58 (App.Div. 1972). The appropriate standard of care is codified in N.J.S.A. 39:4-144. A driver of a vehicle entering a yield intersection at or about the same time as another is certainly close enough to constitute an immediate hazard and, therefore, pursuant to the statutory standard, is required to yield the right of way to all traffic on the intersecting street. Although the trial court properly instructed the jury with respect to the provisions of N.J.S.A. 39:4-144, it should not also have instructed the jury with respect to the right of way standard under N.J.S.A. 39:4-90. To have done so in the circumstances of this case was erroneous and misleading.
The trial court's supplemental charge did not cure the error occasioned by charging portions of both N.J.S.A. 39:4-90 and N.J.S.A. 39:4-144. The inapplicability of N.J.S.A. 39:4-90 was not conveyed by the curative charge which simply read:
This is a controlled intersection, as I indicated to you, so the other statute which I read about stopping or yielding at the intersections [N.J.S.A. 39:4-144], perhaps maybe [sic] the one which you feel is more appropriate here. (Emphasis supplied).
Instead of emphatically instructing the jurors to apply N.J.S.A. 39:4-144 and to disregard N.J.S.A. 39:4-90, the trial court incorrectly left the determination of which statute was most appropriate to the jury's discretion. Accordingly, the trial court's instruction in this regard was error, mandating a new trial.

II.
We are also satisfied that the trial court erred in refusing to instruct the jury as to the appropriate standard of care to be employed when defendant crossed the southbound lanes of *103 Route 165 preparatory to making a U-type turn into the northbound lanes of that highway. The jury instruction generally recommended with respect to a U-turn involving the movement of a vehicle across the path of other traffic is set forth in Ambrose v. Cyphers, 29 N.J. 138, 149-150 (1959) as follows:
1. The law imposes upon the driver of an automobile the duty to exercise the care that a reasonably prudent man would use under all the circumstances confronting him at a particular time. Failure to exercise such care constitutes negligence.
2. Obviously the risk of harm will vary with the circumstances. In some settings that risk is greater than in others, and, when this is so, a reasonably prudent man will exercise a greater amount of care in proportion to the increased risk.
3. With respect to a U-turn, involving as it does a movement across the path of other traffic, the risk of harm is ordinarily increased beyond that which exists when a car is proceeding along a direct course. Hence with respect to a U-turn, a reasonably prudent man would seek an opportune moment for the turn and would exercise an increased amount of care in proportion to the increased danger.
4. Accordingly the law provides that a person seeking to make a U-turn has the duty to seek an opportune moment and to exercise a degree of care in proportion to the increased danger involved in the turn. The question for the jury, therefore, is whether a reasonably prudent man, charged with that duty, would under the circumstances of the case have made the turn when and in the manner in which the driver here proceeded. (Emphasis supplied).
The emphasized portion of the above charge suggests that the Ambrose court was prescribing a higher degree of care not only in instances in which a driver is making a text book U-turn but in any situation in which a motorist is moving across the path of other traffic. This interpretation is supported by our decision in Casey v. O'Neil, 101 N.J. Super. 291 (App.Div. 1968), certif. den., 52 N.J. 491 (1968), which involved a collision at a Y-shaped intersection. There, the trial court granted a motion for a new trial on the ground that the omission of an Ambrose -type instruction in the jury charge was erroneous. On appeal, it was argued that the Ambrose instruction, while appropriate for a U-turn or typical cross intersection, should not be used for a Y-intersection. The reasoning behind this assertion was that drivers on a roadway with a Y-shaped configuration are merely following the contour of the road and not making an actual left turn. We rejected this argument, stating:

*104 We read Ambrose as an attempt to formulate a general instruction which may be made applicable to any vehicle movement across the path of other traffic. That instruction naturally relates to any type of left turn, whether it involves a right angle such as a typical cross or T-intersection, or an angle different from one of 90 degrees. Ambrose simply analyzed and formulated a legal principle pragmatically applied for many years: that under certain special factual circumstances commonly encountered in traffic cases, it is desirable to inform the jury that the particular situation calls for the exercise of an increased amount of care. See 29 N.J. at pp. 146-149. See also Pignatore v. Public Service Coordinated Transport, 26 N.J. Super. 234, 237-239 (App.Div. 1953).
With this principle in mind, it is clear that an Ambrose-type instruction was necessary in the present case. The crucial factor is not the shape of the intersection but the attempt to cross in the path of an approaching vehicle. The O'Neil car was doing precisely that. The instruction requested was therefore appropriate. Moreover, since the Davies vehicle was also making a left turn across the path of the other vehicle, the instruction should be made applicable to both drivers upon any new trial. [101 N.J. Super. at 293].
See also Zec v. Thompson, 166 N.J. Super. 52, 55 (App.Div. 1979).
Here, defendant attempted to cross both southbound lanes of Route 165 in order to reach the break or cut out in the median and make a U-type turn onto the northbound lanes of Route 165. This attempted maneuver across the path of other traffic increased the risk of harm and thus required that defendant exercise a higher degree of care. Consequently, the trial court should have acceded to plaintiffs' request to instruct the jury generally as suggested by Ambrose.

III.
Finally, we hold that on remand there must be a new trial with respect to damages as well as liability. In Bleeker v. Trickolo, 89 N.J. Super. 502 (App.Div. 1965), we held that a damages verdict accompanying a liability verdict of no cause for action is not reliable. The Bleeker rule was re-examined and left intact by our Supreme Court in Johnson v. Salem Corp., 97 N.J. 78, 95-98 (1984), mod'g and aff'g, 189 N.J. Super. 50, 58-60 (App.Div. 1983). Here, the trial court instructed the jury as to the ultimate outcome as required by Roman v. *105 Mitchell, 82 N.J. 336, 346 (1980), and specifically charged that "[i]f you attributed to the plaintiff a percentage of negligence greater than fifty percent, then he would not recover any damages at all and the verdict would be molded in such a fashion as to provide for no recovery." The jury found that plaintiff Edward Burdzy's percentage of negligence was 81.6% but, nonetheless, went on to assess damages. The question of damages should never have been reached as the trial court recognized in telling the jurors: "[Y]ou went ahead and actually answered an additional question that you didn't have to answer." Thus, in light of the Bleeker rule we are constrained to conclude that there must be a new trial on damages as well as liability.

IV.
Accordingly, the judgment under review is reversed and the matter is remanded to the trial court for a new trial on liability and damages. We do not retain jurisdiction.