267 N.J. Super. 329 (1993)
631 A.2d 577
KENNETH R. OSBORNE, PLAINTIFF,
v.
WILLIAM L. O'REILLY AND EINHORN & HARRIS, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided May 12, 1993.
Seamus Boyle, for plaintiff.
Barbara A. Schwab, for defendants.
YANOFF, J.S.C. (retired and temporarily assigned on recall)
This opinion discusses problems ancillary to those considered in Spaudling v. Hussain, 229 N.J. Super. 430, 551 A.2d 1022 (App. Div. 1988), in a different context. In that case, defendant Hussain *330 was a physician who agreed to testify in a negligence action and refused to appear at the trial. Plaintiff sued, alleging that, by reason of Hussain's failure to appear, he had been forced to settle the case for less than its value.
The claim against Hussain was a contract action predicated upon Hussain's agreement to testify. At the trial in which plaintiff's tort cause of action was "retried," the jury rendered a verdict in favor of the plaintiff in the amount of $250,000. This was reduced by 35%, representing plaintiff's negligence in respect of the original accident, which yielded $162,500. Id. at 430, 551 A.2d 1022.
At the first trial, plaintiff's attorney settled for $75,000 because he could not produce a doctor. The Appellate Division found, as a matter of law, that this was a correct decision.
With respect to prejudgment interest, Judge Pressler ruled:
The final issue before us is that of prejudgment interest. As we view the matter, plaintiff was entitled to be made whole by defendant for the loss he sustained by reason of defendant's nonappearance. Our predicate, as was the trial judge's, is that had defendant testified at the Cumberland trial, plaintiff, as of January 7, 1985, the date of the defendant's tort and contract breach, would have been entitled to a verdict of $162,500 plus prejudgment interest thereon. As of that date, however, plaintiff received only the $75,000 settlement proceeds. He did have the use of that sum thereafter. What he did not, however, then have but was entitled to was the difference between $162,500 plus all the prejudgment interest which had already accrued thereon less the $75,000. In our view, therefore, in order to be made whole within the intendment of R. 4:42-11(b),[4] two separate calculations have to be made. First, the full verdict value of $162,500, including prejudgment interest to January 7, 1985, must be calculated. From that sum, $75,000 must be deducted. The difference is the amount of plaintiff's economic loss and is also the amount on which prejudgment interest should be calculated from January 7, 1985, forward.
[4] Defendant does not argue the inapplicability to this verdict of R. 4:42-11(b). In any event, interest would be allowable on the contract cause of action as a matter of equitable principle. See Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 351 A.2d 349 (1976).

[229 N.J. Super. at 444-45, 551 A.2d 1022.]
Thus, plaintiff obtained interest on interest, a problem in this case. However, the Hussain ruling was the court's factual assessment of the controversy. No legal principle, other than that plaintiff was *331 entitled to be "made whole" (id. at 444, 551 A.2d 1022), was enunciated. There is no ruling on the question of allocation of interest which controls a trial court. Therefore, I feel free to examine the interest problems in this legal malpractice case.
This was a trial within a trial. Plaintiff's complaint was dismissed in the first negligence action because of a failure of discovery. The dismissal was sustained on appeal. Malpractice was stipulated in this action. The trial conducted here was to determine what the verdict would have been had there been no malpractice.
On this motion for new trial, alternatively for remittitur, there are two issues: whether there was evidence of negligence, and whether the verdict was excessive.
The rulings on these issues were discussed in a separate opinion which was not submitted for publication. The motions for new trial and remittitur were denied and a verdict of $450,000, with a finding of 85% fault on the part of defendant and 15% fault on plaintiff's part, was not disturbed.
This opinion concerns plaintiff's application for interest. Except to the extent that Spaulding v. Hussain, supra, 229 N.J. Super. at 430, 551 A.2d 1022, dealt with the problem, no New Jersey case has articulated the rules as to interest in a trial-within-a-trial context. Nor has research disclosed any case elsewhere which controls the issue.
R. 4:42-11(b) provides:
Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.... The contingent fee of an attorney shall not be computed on the interest so included in the judgment.
In a trial within a trial in a legal malpractice case, the object is to determine the recovery which the client would have obtained if malpractice had not occurred. Gautam v. De Luca, 215 N.J. Super. *332 388, 521 A.2d 1343 (App.Div. 1987); Hoppe v. Ranzini, 158 N.J. Super. 158, 385 A.2d 913 (App.Div. 1978).
The plaintiff "may recover for losses which are proximately caused by the attorney's negligence or malpractice." Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 341, 419 A.2d 417 (1980). These losses include the interest plaintiff would have recovered on the underlying claim.[1]McLellan v. Fuller, 226 Mass. 374, 115 N.E. 481 (1917); Hoekstre v. Golden B. Products, 77 Or. App. 104, 712 P.2d 149 (1985), review den., 300 Or. 563, 715 P.2d 94 (1986); David J. Meiselman, Attorney Malpractice: Law and Procedure § 4:5 at 62 (1980); Ronald E. Mallen, Jeffrey M. Smith, Legal Malpractice § 16.5 at 897-99, (3d ed. 1989); W.E. Shipley, Annotation, Measure and Elements of Damage Recovery for Attorney's Negligence with Respect to Maintenance or Prosecution of Litigation or Appeal, 45 A.L.R.2d 62, 70 (1959); John E. Theuman, Annotation, Measure and Elements of Damages Recoverable for Attorney's Negligence in Preparing or Conducting Litigation  Twentieth Century Cases, 90 A.L.R.4th 1033, at 1088 (1991).
Having resolved that the plaintiff is entitled to interest on the underlying claim, the difficult question to determine is the terminus ad quem. Mallen & Smith, supra, at 899, discussing McLellan v. Fuller, supra, 115 N.E. at 481, state that "A preliminary requirement is that the client establish when the verdict would have been rendered." Following this suggestion, interest on the underlying claim, as an element of direct damages of the malpractice action, would run until the date a verdict would have been reached. That approach here is unworkable. Legal actions may remain on the docket for extended periods, or move to trial quickly. Normally, neither the jury nor the court can do better than guess the date when a verdict would have been obtained. *333 Further, it leaves open the question of whether and how much post-judgment interest plaintiff would have recovered after such a verdict. A plaintiff who is not compensated for the time he or she waits to be paid, is not fully compensated.
An alternative would be to allow interest until the date of malpractice on the part of the attorney, since legal malpractice is a tort, separate from the underlying action. Plaintiff's loss, due to malpractice, is the value of his or her personal injury claim at the time it was lost. Under the cited rule, the malpractice case would result in imposition of interest on the malpractice judgment, as well as interest on the underlying tort.
We are concerned under this alternative with the date when attorney's neglect crystallized into a cause of action. In a statute of limitations context, the cause of action accrues at the time of damage to the plaintiff, rather than time of the negligent act. Rosenau v. New Brunswick, 51 N.J. 130, 137-39, 238 A.2d 169 (1968). While close analysis probably would show that the malpractice occurred earlier, there is no doubt that here, plaintiff's claim definitively became a cause of action on the date the order dismissing his complaint was entered.[2] Under this approach, prejudgment interest would be calculated to that date as an element of damages, and added to the monetary verdict. Prejudgment interest for the malpractice action then would be imposed on the entire amount, pursuant to the rule, resulting in interest on interest. This method provides certainty in calculating damages, and also conforms with both the formalities of tort law and the language of the interest rule.
But there are problems with the result. More than three years elapsed between dismissal of the case and institution of the *334 malpractice suit. Plaintiff learned of the dismissal after it was entered. It was then necessary for him to hire new attorneys who appealed the dismissal. The malpractice complaint was filed after a result adverse to plaintiff on appeal.
Thus, if plaintiff receives interest to the date of the order dismissing the complaint, or even to the date that order was affirmed, and interest on the malpractice action in accordance with the rule, there will be a gap between the termination of the running of the prejudgment interest on the underlying cause of action and the inception of the running of prejudgment interest on the malpractice action.
Such a result would deprive plaintiff of the remedy the plaintiff would have received had he obtained a judgment on the underlying action, resulting either in payment or an appeal during which post-judgment interest would have run. Plaintiff would not have obtained full compensation.
A third option is to allow plaintiff prejudgment interest on the underlying claim to the date of the malpractice judgment. "`[T]he sundry rules for measuring damages are subordinate to the ultimate aim of making good the injury done or loss suffered and hence the answer rests in good sense rather than in a mechanical application of a single formula.'" N.J. Power & Light Co. v. Mabee, 41 N.J. 439, 441, 197 A.2d 194 (1964), quoting 525 Main Street Corp. v. Eagle Roofing Co., Inc., 34 N.J. 251, 255, 168 A.2d 33 (1961).
R. 4:42-11(b) specifically makes provision for exception where there are "exceptional cases." This provision has been invoked rarely. Pressler, Current N.J. Court Rules, comment 2(b) 8 on R. 4:42-11(b), states: "This suspension authority should, however, be most cautiously exercised, and always with consideration of the underlying purpose and philosophy of the rule  namely that prejudgment interest is not a penalty but is rather a payment for the use of money. Cf. Carrino v. Novotny, 78 N.J. 355, 367-368 [396 A.2d 561] (1979)."
*335 Only two of the cases cited used the extraordinary circumstances provision. In Dall'Ava v. H.W. Porter Co., 199 N.J. Super. 127, 488 A.2d 1036 (App.Div. 1985), "the denial of an award of prejudgment interest ... because of [a] court ordered stay" was affirmed. The court relied upon the logic of Judge Conford, dissenting in Busik v. Levine, 63 N.J. 351, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). In Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 644, 524 A.2d 841 (App.Div. 1987), the Appellate Division affirmed a trial judge who "reasonably concluded that under these circumstances plaintiffs would receive a windfall if they were also awarded prejudgment interest."
As indicated by the quotation from the rules governing the courts, prejudgment interest is payment for the use of money. Busik v. Levine, supra, 63 N.J. at 351, 307 A.2d 571. If a plaintiff receives interest on the underlying cause of action to the date of judgment in this case, he will be compensated adequately. However, if he is also given interest on the malpractice action, he will receive the "windfall" which Chattin disapproves.
In order to deal fairly with the competing interests of the plaintiff and the defendant, and also that of the attorney representing the plaintiff, I have made calculations of the practical consequences of rulings in this matter. These probably are not precise because they do not take into account the expenses of the trial. They assume that the lawyer's fee will be in accordance with R. 1:21-7. Interest has been calculated in accordance with the interest rule.
For both alternatives, I have assumed that the judgment was entered on May 10, 1993. Variations on the date of the entry of judgment would not result in a significant change of the monetary consequences.
Under the quoted rule, the attorney would be entitled to a contingent fee on interest which is included as an element of damages in the basic tort action, but not on the interest on the malpractice suit. This raises problems which require discussion.
*336 If the solution which results in an hiatus during which the plaintiff receives no compensation for the loss of the use of money is selected, the figures would show the following:

 Plaintiff would receive $396,833.32
 Plaintiff's attorney would
 receive 129,247.76
 ___________
 The cost to defendant would be $526,081.08

If interest is calculated on the underlying tort to the date of the judgment on the malpractice action, it would amount to $233,900.70. Added to the verdict of $382,500, the judgment would be $616,400.70.
The sum of $616,400.70 is obtained, as indicated, by adding to the verdict as an element of damages, the interest cost on the underlying tort claim. If the attorney's fee is calculated on that basis, it would be $169,113.47, substantially greater than under the ruling in which there is a hiatus. The client's recovery also would be substantially greater. Obviously, the cost to the defendant would mount greatly.
This raises the problem of conflict of interest in R.P.C. 1.7(b), which reads:
A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved. [Emphasis added.]
At oral argument, plaintiff's attorney stated that he had made full disclosure to his client of the facts and had reached an agreement with his client, that they divide any additional fee obtained by the attorney as the result of the application of the last-mentioned interest rule. This would comport with R.P.C. 1.7(b)(2), supra.
*337 This, of course, is subject to judicial review. In re Estate of Kish, 52 N.J. 454, 472, 246 A.2d 1 (1968). A conceivable alternative would be to limit the attorney to the fee he would have received if the court had selected the solution in which there is a period during which the client receives no interest. In view of the agreement put on record by plaintiff's attorney, which, of course, will be subject to question by the client, I see no reason why, taking into account the cited rule, it should not be implemented. The calculations above show that the attorney would receive approximately $20,000 additional. The case was difficult and novel. I consider the additional compensation appropriate.
Finally, I have to take into account the impact upon the defendant of the additional cost as the result of calculating the interest on the underlying tort to the date of judgment in the malpractice action. R.P.C. 1.4(a) requires that: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." In re Rosenthal, 90 N.J. 12, 16, 446 A.2d 1198 (1982). There was, here, a clear violation of that rule by the attorney. At oral argument, counsel for plaintiff stated, uncontroverted by defense counsel, that plaintiff was not made aware of the dismissal until long after the dismissal. The lawyer did not advise the client that the complaint had been dismissed; the client discovered what had happened by his own resources. Had the lawyer adhered to the rule, there would not have been the hiatus to which reference has been made. There is therefore no reason why the lawyer and, as is the fact in this case, the lawyer's insurance carrier, should not be responsible for the cost of the delay and make the aggrieved client whole.[3]
The attorney for plaintiff will submit, pursuant to the rule, an order embodying the foregoing ruling.
NOTES
[1] Parenthetically, in calculating damages, there is no offset for what would have been the negligent attorney's fees. Strauss v. Fost, 213 N.J. Super. 239, 517 A.2d 143 (App.Div. 1986).
[2] In a statute of limitations context, the Supreme Court recently ruled that a cause of action in legal malpractice arises at the time the initial order adverse to the client-plaintiff is entered, rather than the date an appeal is decided. Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459 (1993). This has influenced my ruling that the cause of action arose at the time of the trial judge's dismissal, rather than affirmance on appeal.
[3] See McCafferty v. Musat, 817 P.2d 1039, 1045 (Colo.Ct.App. 1990), where interest on the underlying tort was allowed, apparently to the date of the malpractice judgment, compounded pursuant to statute.