285 N.J. Super. 125 (1995)
666 A.2d 599
KARIN I. DERFUSS, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1995.
Decided November 8, 1995.
*127 Before Judges HAVEY, D'ANNUNZIO and CONLEY.
Brian G. Steller argued the cause for appellant/cross-respondent (Connell, Foley & Geiser, attorneys; Mr. Steller, of counsel; Glenn T. Dyer, on the briefs).
James Hely argued the cause for respondent/cross-appellant (Weiseman Hely, attorneys; Mr. Hely, on the brief).
The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiff Karin I. Derfuss is insured by defendant New Jersey Manufacturers Insurance Company (NJM) under a policy providing underinsured motorist (UIM) coverage. Plaintiff sustained injuries as a result of an automobile accident with an underinsured tortfeasor. Pursuant to the terms of the policy, an arbitration panel awarded plaintiff $350,000 and apportioned forty percent liability against her. The Law Division judge granted plaintiff a trial de novo on both the damage and liability issues. A jury thereupon awarded her $500,000 and found her twenty percent liable for the accident.
*128 We conclude that the arbitrators' determination as to liability was binding, and thus, plaintiff had no right to a trial de novo on the issue. We therefore reverse the order granting plaintiff a trial de novo on liability and reduce plaintiff's $500,000 damage verdict rendered by the jury to $300,000, to reflect the arbitrators' allocation of forty percent liability against plaintiff. We affirm the award of prejudgment interest.
Plaintiff was injured in an August 31, 1990, two-car accident in a shopping mall parking lot in South Plainfield. She settled with the tortfeasor for $100,000, the limit under the tortfeasor's liability policy.
On August 3, 1992, plaintiff filed a complaint against NJM because of a dispute concerning her entitlement to personal injury protection (PIP) coverage under her policy. The parties were also unable to settle plaintiff's UIM claim. NJM's UIM endorsement provides for arbitration if the parties do not agree as to whether the insured is "legally entitled to recover damages" or as to the "amount of damages." It also provides:
Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:
1. Whether the insured is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of New Jersey. If the amount exceeds the limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.
On February 23, 1993, plaintiff's UIM claim was arbitrated, and the arbitrators unanimously found plaintiff forty percent responsible for the accident and awarded damages in the amount of $350,000.
Plaintiff moved to amend her complaint to seek a trial de novo on her UIM claim. On March 19, 1993, the motion was granted, but only as to the quantum of damages. On plaintiff's reconsideration motion, the judge concluded that plaintiff was entitled to a de *129 novo review as to both damages and liability since, according to the judge, the UIM arbitration provision was "ambiguous."
During the jury trial, plaintiff, her mother, and two friends testified concerning plaintiff's injury and the impact it had on her life. The de bene esse testimony of neurosurgeon Paul C. McCormick, M.D., was also offered by plaintiff. Extensive testimony from reconstruction specialists was presented by both sides concerning liability. The jury found plaintiff twenty percent liable and awarded her $500,000 in damages.
The trial judge denied NJM's motion for a new trial or for remittitur and granted plaintiff prejudgment interest from March 19, 1993, the date she was granted leave to amend her complaint to seek a trial de novo as to her UIM claim.

I
NJM argues that the motion judge erred in finding ambiguity in the arbitration clause. It correctly notes that since the motion judge's determination, the Law Division in Salib v. Alston, 276 N.J. Super. 108, 111-12, 647 A.2d 484 (Law Div. 1994), has construed the same UM/UIM arbitration clause that is before us, and concluded that it unambiguously allows for a trial de novo solely in regard to the amount of damages and "only ... when the amount of damages falls within a specified range." Id. at 112, 647 A.2d 484.[1]
Plaintiff counters by contending that Salib was erroneously decided. She argues that paragraph one, requiring the arbitrators to decide "whether the insured is legally entitled to recover damages" may simply require the arbitrators to answer "yes" or "no" as to the insured's "entitlement to some recovery." She asserts that paragraph two, which applies to the "amount of *130 damages," requires an apportionment of fault to determine the insured's "net" damages, and if such damages exceed the statutory minimum,[2] she is entitled to a "right to a trial" as to both damages and the liability apportionment. She claims that because there is at least an ambiguity, the language should be construed in her favor as an insured by offering a trial de novo as to both liability and damages.
We reject the argument and adopt Salib's holding that the arbitration clause provides for a "right to a trial" on damages only, provided that the award exceeds the statutory minimum. We do so even if we accept plaintiff's argument that the language in the clause is ambiguous.
The well-settled principle construing ambiguities in insurance contracts in favor of the insured generally applies to issues concerning the terms of coverage. See Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 177-79, 607 A.2d 1255 (1992) (interpreting "bodily injury" in a homeowner's policy to cover emotional distress injuries); Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 7, 19, 170 A.2d 800 (1961) (construing the phrase "resident of the household" to cover insured's wife); Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961) (construing provision covering loss "resulting directly and independently of all other causes from accidental bodily injury" to include insured's pre-existing condition activated by accident); Franklin Mutual Ins. Co. v. Security Indemn. Ins. Co., 275 N.J. Super. 335, 340, 646 A.2d 443 (App.Div.) (policy endorsement covering accidents "arising out of the ... use" of premises construed to mean "originating from the use" or "growing out of the use of"), certif. denied, 139 N.J. 185, 652 A.2d 173 (1994). The principle is rooted in the notion that members of the public "are entitled to the broad measure of protection necessary to fulfill *131 their reasonable expectations," Kievit v. Loyal Protective Life Ins. Co., supra, 34 N.J. at 482, 170 A.2d 22, and thus "their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'" Ibid. (quoting Danek v. Hommer, 28 N.J. Super. 68, 76, 100 A.2d 198 (App.Div. 1953), aff'd, 15 N.J. 573, 105 A.2d 677 (1954) (emphasis added)).
Here, the arbitration clause is neutral in its effect: it defines the limits of the right to a trial de novo, not whether the insured should or should not be afforded coverage under the policy. In this case, construing the clause to provide a right to a trial de novo as to liability may benefit the insured. In the next case, such a construction may benefit the insurer who has suffered an unfavorable arbitration award as to liability. Indeed, other carriers may have recognized such a result, and have written policies expressly providing for a trial de novo on all issues in the event the arbitrators' award is rejected by either party. See Annunziata v. Prudential Ins. Co., 260 N.J. Super. 210, 215, 615 A.2d 686 (Law Div. 1992) ("[i]f an arbitration award exceeds these limits [the statutory liability minimum] ... either party has a right to trial on all issues in a court of competent jurisdiction...." (Emphasis added)).
Rather than construing any ambiguity in plaintiff's favor, our function in reviewing the arbitration clause language, as with any other contract, "is to search broadly for the probable intent of the parties...." Erdo v. Torcon Constr. Co., Inc., 275 N.J. Super. 117, 120, 645 A.2d 806 (App.Div. 1994); Sinopoli v. North River Ins. Co., 244 N.J. Super. 245, 250, 581 A.2d 1368 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991). That probable intent is found in the manner by which the arbitration clause is constructed.
The two paragraphs of the clause require the arbitrators to make separate and distinct findings. Paragraph one requires a finding as to whether the insured is "legally entitled to recover damages," that is, a finding of fault. See Selected Risks Ins. Co. v. *132 Schulz, 136 N.J. Super. 185, 187, 345 A.2d 349 (App.Div. 1975); Selected Risks Ins. Co. v. Dierolf, 138 N.J. Super. 287, 293, 350 A.2d 526 (Ch.Div. 1975). Contrary to plaintiff's argument, all aspects of the liability issues are subsumed in paragraph one. To determine if the insured is "legally entitled to recover damages," the arbitrators necessarily must not only determine fault, but also apportion liability. If the insured's fault exceeds fifty percent, he or she is not "entitled to recover" and the arbitrators do not even reach the "amount of damages" issue addressed in paragraph two. See N.J.S.A. 2A:15-5.1. Significantly, no right to a trial de novo is afforded from the arbitrators' liability decision under paragraph one.
In contrast, paragraph two neither expressly nor implicitly directs the arbitrators, as plaintiff claims, to calculate the "net" damages as apportioned by the percentage of negligence attributable to the insured. To the contrary, the focus in paragraph two is on damages, not fault. See Salib, supra, 276 N.J. Super. at 111, 647 A.2d 484. The paragraph is entitled "amount of damages" and it makes the "amount" determined by the arbitrators binding if it should fall below the statutory minimum provided by law, and allows for a "right to a trial" only if the "amount" exceeds the statutory minimum. Because the "right to a trial" is placed in this paragraph which provides exclusively for the computation of the "amount of damages," it seems clear that the parties intended that right to apply only to the damage issue.
This conclusion is consistent with New Jersey's strong public policy encouraging alternate dispute resolution which "can only succeed where arbitration actually settles disputes between parties who have specifically contracted for it." Cutitta v. Selective Ins. Co., 255 N.J. Super. 252, 259, 604 A.2d 989 (App.Div. 1992). As our Supreme Court in Ohio Casualty Ins. Co. v. Benson, 87 N.J. 191, 199, 432 A.2d 905 (1981) stated:
Just as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration. Thus, our [broad] construction of the scope of arbitration clauses is consistent with *133 the policy of favoring commercial arbitration as a speedy and inexpensive method for settling disputes.
[(Citation omitted).]
Concluding here that the arbitrators' liability award is binding fosters that public policy.

II
NJM next argues that if the liability issue was not subject to a trial de novo, a new jury trial as to damages is mandated. This is so, NJM contends, because "the overwhelming majority of the trial de novo was devoted to the liability issue," and thus the court cannot be certain that the "intangible factors" raised by the liability evidence did not "infect[]" the jury verdict of $500,000.
We reject the argument since NJM fails to demonstrate that the verdict was "contrary to the weight of the evidence or clearly the product of mistake, passion, prejudice, or partiality." Lanzet v. Greenberg, 126 N.J. 168, 175, 594 A.2d 1309 (1991).
First, the verdict was not so excessive as to constitute a miscarriage of justice. R. 4:49-1(a); Dolson v. Anastasia, 55 N.J. 2, 12, 258 A.2d 706 (1969). Indeed, NJM's new trial motion based on the excessiveness argument was denied by the trial judge, and rightly so. Plaintiff, a thirty-year old veterinarian at the time of the accident, suffered substantial injuries. She underwent two surgical procedures to repair a C-5, C-6 disc herniation. The first involved removal of a portion of the disc to relieve nerve-root pressure, the second to fuse the spine. Plaintiff returned to work part-time twenty months after the accident. She still lacked endurance, suffered pain, and could not perform certain veterinarian procedures. She continued with physical therapy. She is left with a permanent injury to the C-6 nerve root and limitation of motion in the injured area. She no longer participates fully in recreational, sporting and household activities she enjoyed prior to the accident. While the $500,000 verdict was substantial, there is no "pervading sense of `wrongness'" in the award justifying our *134 intervention. Baxter v. Fairmont Food Co., 74 N.J. 588, 599, 379 A.2d 225 (1977) (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)).
Second, there is absolutely nothing before us to suggest that the jury's deliberations as to liability increased the damage award. The liability evidence consisted of testimony by plaintiff, the tortfeasor and accident reconstruction experts. The liability verdict rendered based on that testimony was separable from the damage evidence, and was otherwise sound. See Von Borstel v. Campan, 255 N.J. Super. 24, 31, 604 A.2d 614 (App.Div. 1992); Tronolone v. Palmer, 224 N.J. Super. 92, 98, 539 A.2d 1224 (App. Div. 1988).
Also, this is not a case where the jury improvidently rendered a damage award after finding that plaintiff's negligence exceeded fifty percent. See Burdzy v. Cooney, 215 N.J. Super. 98, 104-05, 521 A.2d 364 (App.Div. 1987). In such a circumstance, we have held that the damage verdict is unreliable. Id. at 105, 521 A.2d 364. To the contrary, in response to special verdict interrogatories, here the jury fixed plaintiff's liability at twenty percent, and only then rendered its damage award. We must assume that the jury followed the trial judge's instructions concerning fault and apportionment of negligence, Cf. State v. Manley, 54 N.J. 259, 271, 255 A.2d 193 (1969), and was obedient to the judge's directive that the damage award be determined without consideration of the percentage of negligence attributable to plaintiff. See N.J.S.A. 2A:15-5.2a (the trier of fact shall award damages to the injured party "regardless of any consideration of negligence, that is, the full value of the injured party's damages"). Accordingly, we affirm the judgment entered on the damage verdict but mold the verdict to reflect the arbitrators' forty percent liability allocation against plaintiff. See N.J.S.A. 2A:15-5.2c. The damage verdict is therefore reduced to $300,000, and judgment is entered in the amount of $200,000 after deducting the $100,000 paid to plaintiff by the tortfeasor.

*135 III
Plaintiff cross-appeals, contending that the trial judge erred in awarding prejudgment interest only from March 19, 1993, the date plaintiff was granted leave to amend her complaint to seek a trial de novo on her UIM claim. Essentially, plaintiff argues that since the UIM endorsement covers damages she is "legally entitled to recover" against the tortfeasor, she is entitled to prejudgment interest under R. 4:42-11(b). That rule provides that in tort actions, prejudgment interest shall be calculated from the date of the institution of the action or six months after the cause of action arises, whichever is later. In this case, the pertinent date would be August 3, 1992, the date plaintiff filed her original complaint against NJM to recover PIP benefits.
Plaintiff's argument is flawed because it is premised on the erroneous assumption that the case is a negligence, not a contract action. R. 4:42-11(b) is limited to actions in tort; it does not apply to actions to recover UIM benefits since such a claim arises from contract. Rivers v. General Acc. Group, 192 N.J. Super. 355, 360, 470 A.2d 19 (App.Div. 1983). Generally, because damages in arbitration proceedings are unliquidated, interest on the arbitration award runs from the date the award is entered. Id. at 359, 470 A.2d 19.
Of course, prejudgment interest may be awarded on contract actions, even unliquidated claims, "not as a matter of right but rather in accordance with equitable principles." Pressler, Current N.J. Court Rules, comment 9 on R. 4:42-11 (1996) and cases cited therein; and see George H. Swatek, Inc. v. North Star Graphics, Inc., 246 N.J. Super. 281, 286-88, 587 A.2d 629 (App.Div. 1991); Ellmex Constr. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 212-13, 494 A.2d 339 (App.Div. 1985), certif. denied, 103 N.J. 453, 511 A.2d 639 (1986). Here, however, not only was plaintiff's UIM claim unliquidated prior to the arbitration award, but there is nothing to suggest that NJM failed to negotiate with plaintiff in good faith to settle the matter during the pre-arbitration period. See Ellmex, supra, 202 N.J. Super. at 213, 494 A.2d 339 (where *136 contest between insurer and insured "is legitimately one as to the amount of damage sustained ... the equities indeed may favor the insurer" in a determination concerning prejudgment interest). Also, NJM did not delay or obstruct the arbitration proceedings or the trial de novo. The trial judge therefore determined that prejudgment interest should commence upon the date plaintiff was granted leave to amend her complaint to seek the UIM benefits. The judge's finding on this point deserves deference. See Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171, 181-82, 643 A.2d 649 (App.Div. 1994).
Plaintiff's reliance on Spaulding v. Hussain, 229 N.J. Super. 430, 551 A.2d 1022 (App.Div. 1988) and Osborne v. O'Reilly, 267 N.J. Super. 329, 631 A.2d 577 (Law Div. 1993) is misplaced. Spaulding and Osborne were malpractice actions in which plaintiffs sought to recover all damages proximately caused by the professional negligence, including the loss of prejudgment interest on the underlying claim. See Spaulding, supra, 229 N.J. Super. at 444-45, 551 A.2d 1022; Osborne, supra, 267 N.J. Super. at 332, 631 A.2d 577. No such damage claim is asserted here.
The order granting plaintiff a trial de novo from the arbitrators' liability award is reversed. The post-judgment order denying NJM's motion for a new trial is affirmed. Judgment is entered in plaintiff's favor in the amount of $200,000. The award of prejudgment interest is affirmed.
NOTES
[1] In Cohen v. Allstate Ins. Co., 231 N.J. Super. 97, 102 n. 2, 555 A.2d 21 (App.Div.), certif. denied, 117 N.J. 87, 563 A.2d 846 (1989), we left unanswered the question of whether a similar policy provision permitted a trial de novo as to liability since the question was not raised.
[2] Under N.J.S.A. 17:28-1.1a(1), the minimum coverage under any automobile liability policy for injury to one person in any one accident is established at $15,000.