DELAWARE TRANSIT CORPORATION, Plaintiff Below, Appellant,

v.

AMALGAMATED TRANSIT UNION LOCAL 842 and Harry Bruckner, Defendants Below, Appellees.

No. 85, 2011.

Supreme Court of Delaware.

Submitted: Oct. 26, 2011.
Decided: Nov. 28, 2011.

9. 42 PA. CONS. STAT. § 9792 (West, 2011).

10. MD. CODE ANN., CRIM. PRO. § 11–701 (West, 2011).

Andrew G. Kerber, Esquire, Department of Justice, Wilmington, Delaware, for appellant.

Perry F. Goldlust, Esquire, Perry F. Goldlust, P.A., Wilmington, Delaware, Alaine S. Williams, Esquire, and Amy L. Rosenberger, Esquire (argued), Willig, Williams & Davidson, Philadelphia, Pennsylvania, for appellee, Amalgamated Transit Union Local 842.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

Delaware Transit Corporation ("DTC") filed a complaint with the Court of Chancery of the State of Delaware against the

Amalgamated Transit Union, Local 842 ("Union") and Harry Bruckner ("Bruckner") in the nature of a declaratory judgment action ("Complaint"), pursuant to Title 10, Chapter 65. The Complaint sought an order vacating or modifying a labor arbitration award ("Award") issued by Arbitrator Alan A. Symonette ("Arbitrator"), pursuant to a collective bargaining agreement ("CBA") between DTC and the Union.[1] The Award reinstated Bruckner, who was terminated by DTC, with back pay less interim earnings.

The Court of Chancery granted the Union's motion for summary judgment. DTC's sole argument in this appeal is that the Arbitrator's decision should be vacated due to the appearance of bias or partiality on the part of the Arbitrator. We have concluded that argument is without merit. Therefore, the judgment of the Court of Chancery must be affirmed.

### *Facts*

The DTC hired Bruckner as a paratransit driver in 2004—a job in which his responsibilities included picking up and transporting people who met DTC criteria. At the time of his hire, Bruckner was married and had four children. His wife is employed as a nurse and works the midnight shift from approximately 11 p.m. through 7 a.m. Bruckner drove a split shift from Monday through Friday, beginning at 7 a.m. to 10 a.m. and then following up at 2 p.m. to 6 p.m.

Given their work schedules, Bruckner or his wife were able to be present for their children for all hours of the day except from approximately 6 a.m. to 8 a.m. Prior to June 2008, Bruckner's mother-in-law provided child care during those two hours, while residing in the couple's home. In June 2008, Bruckner's mother-in-law was undergoing treatments for cancer and was losing her sight. Nevertheless, she continued to provide childcare for the two hours in which both parents were at work.

On June 15, 2008, Bruckner incurred a "miss," which at the time was his fifth miss within a twelve-month period. A miss is defined as an instance in which an employee fails to report on time for the scheduled work day. The CBA permits progressive discipline for individuals who incur a miss during a floating twelve-month period ("Miss Rules"). Pursuant to the CBA, an individual receives progressive penalties over eight steps with the final step being termination from employment. After his fifth miss, DTC placed Bruckner on the two-day list status for the fifth miss in a rolling twelve-month period. Around the same time, Bruckner's mother-in-law became very ill and was suffering from the side effects of chemotherapy treatment. She died on July 6, 2008.

According to testimony by Bruckner at the hearing, the loss of his mother-in-law resulted in further violations of the Miss Rules because he could not secure dependable childcare. On July 28, 2008, Bruckner incurred his sixth miss, and, on August 7, 2008, his seventh miss.

Prior to incurring his eighth miss, Bruckner attempted to take steps to prevent that from happening. He contacted his supervisor, the labor relations specialist, and the executive director. He asked for retroactive leave pursuant to the Family Medical Leave Act, but was not eligible since that Act does not provide coverage for the illness or death of one's mother-in-law. He asked for a leave of absence

---

1. The Delaware Uniform Arbitration Act in Title 10, Chapter 57 does not apply to "labor contracts with either public or private employers where such contracts have been negotiated by, or the employees covered thereby are represented by, any labor organization or collective bargaining agent or representative." Del.Code Ann. tit. 10, § 5725 (West 2006).

pursuant to Article 20.1 of the CBA, which gave DTC the ability to provide discretionary leave. DTC denied that request, as it was permitted to under the CBA. He asked to have his start time changed to an uncovered paratransit run that fit his childcare needs. DTC, without consulting the Union, denied that request because it unilaterally concluded that such action would constitute a violation of the CBA.

### Arbitrator's Award

On November 9, 2009, a hearing was held before the Arbitrator. At the arbitration hearing, the Union and DTC, who were both represented by counsel, stipulated to the issue to be decided by the Arbitrator: "Was the grievant, Mr. Harry Bruckner, terminated for just cause? If not, what shall the remedy be?" On January 5, 2010, the Arbitrator issued an opinion and Award in which he sustained the grievance and ordered Bruckner to be reinstated with back pay less any interim earnings.

In rendering his decision, the Arbitrator relied upon several sections of the CBA. First, he cited Section 13 of the Miss Rules, which outlines progressive discipline for up to eight misses within a floating twelve-month period. Second, he quoted from Section 20, Leaves of Absence, which gives the DTC discretion to provide unpaid leaves of absence to employees who make a written request. Third, he quoted, in part, Section 35, Bid Shifts, which describes the process by which employees may bid on particular runs at DTC ("Bidding Rules"). Although the Arbitrator did not specifically mention Section 10, Discipline, he did rely upon it in finding that DTC did not have "just cause" in terminating Bruckner. Section 10 states, in pertinent part, that "[n]o employee who has successfully completed the

probationary period shall be discharged or disciplined without just cause."

The Arbitrator found that DTC's failure to consider the option of allowing Bruckner to switch runs was either arbitrary or constituted disparate treatment:

> In this case, management's failure to consider that option at least to the extent of consulting with the Union to reach an accommodation was at least arbitrary or at most an instance of disparate treatment. It was clear that the grievant was attempting to correct his situation and had come to management for help. Even though the solution may have been a deviation from the language of the contract, given the history between the parties in which waivers have been granted and that this accommodation would not have affected any other employees, management could have at least spoken to the Union to determine whether this is a possibility. It is for this reason that I sustain this grievance.

As a remedy, the Arbitrator directed DTC to return Bruckner to his former position with back pay less any interim earnings. The Arbitrator also directed that Bruckner be placed on the disciplinary step of the Miss Rules that he was on at the time of his termination.

### Court of Chancery Ruling

On March 17, 2010, DTC filed the Complaint in the Court of Chancery seeking to vacate the Award to Bruckner. The Union filed a motion for summary judgment, arguing that none of the three grounds for vacating a labor arbitration award applied in this case. Therefore, the Union argued that the Arbitrator's Award should be affirmed summarily.

■ The standards for judicial intervention in arbitration proceedings are always narrowly drawn.[2] The role of the Court of

---

**2.** *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681 (7th Cir.1983); *Blue Tee Corp. v.* *Koehring Co.*, 754 F.Supp. 26, 30 (S.D.N.Y. 1990).

Chancery in conducting post-arbitration judicial review is limited in a labor dispute to three issues:

> Delaware has long had a policy favoring arbitration, and its courts have applied a deferential standard when reviewing labor arbitration awards. [The Court of Chancery] will not disturb a labor arbitration award unless (a) the integrity of the arbitration has been compromised by, for example, fraud, procedural irregularity, or a specific command of law; (b) the award does not claim its essence from the CBA; or (c) the award violates a clearly defined public policy.

> Where a grievance is arbitrated under a collective bargaining agreement, courts will not review the merits of the arbitration award other than on the grounds listed above. To do otherwise would give courts the final say on the merits of arbitration awards and undercut benefits of labor arbitration-namely, speed, flexibility, informality and finality.[3]

In opposing the Union's motion for summary judgment, DTC argued that the Award should be vacated on the grounds that the integrity of the arbitration was compromised because the Arbitrator failed to disclose to the parties that his wife had died of cancer a few months before the arbitration hearing. According to DTC, this created the appearance of bias or partiality because Bruckner argued that he failed to arrive at work in a timely fashion after his mother-in-law, who had provided daycare for his children, died of cancer. DTC raised no other issue in opposition to the Union's motion for summary judgment.

In this appeal, DTC does not argue that the Award violates public policy. It also does not argue that the Award "does not claim its essence from the CBA." The only grounds for vacating the Award that DTC raises in its opening brief to this Court is that the integrity of the arbitration was compromised because the Arbitrator's shared life experience gave the appearance of bias or partiality.[4]

### *Labor Arbitration Rule 17*

In support of its sole argument on appeal, DTC relies upon Rule 17 (Disclosure and Challenge Procedure) of the American Arbitration Association Labor Arbitration Rules ("Rule 17"). Rule 17 states, in pertinent part:

> No person shall serve as a neutral arbitrator in any arbitration under these rules in which that person has any financial or personal interest in the result of the arbitration. Any prospective or designated neutral arbitrator shall immediately disclose any circumstance likely to affect impartiality, including any bias or financial or personal interest in the result of the arbitration.[5]

The rule requires that "any circumstance likely to affect impartiality" be disclosed.[6] DTC submits that if an arbitrator has a shared personal life experience that might possibly cause the arbitrator to be sympathetic or empathetic to the position of one of the parties, it must be disclosed and is a basis for disqualification. Thus, DTC contends that the Arbitrator's failure to disclose his wife's death from cancer to

---

**3.** *Meades v. Wilmington Hous. Auth.*, 2003 WL 939863, at *4 (Del.Ch. Mar.6, 2003).

**4.** *Emerald Partners v. Berlin*, 726 A.2d 1215, 1224 (Del.1999) ("Issues not briefed are deemed waived."); *Murphy v. State*, 632 A.2d 1150, 1152 (Del.1993) ("The failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim on appeal.") (footnote omitted).

**5.** Labor Arbitration Rules of the American Arbitration Association R.17, http://www.adr.org/sp.asp?id=25730# 17 (amended and effective July 1, 2005).

**6.** *Id.*

the parties constituted a violation of Rule 17, and, therefore, requires vacating the Award.

The Court of Chancery concluded that Rule 17 concerns actual financial or personal relationships between the arbitrator and a party, an agent of a party, or an attorney for a party. The ethics rules for arbitrators, written and approved by the American Arbitration Association ("AAA"), the National Academy of Arbitrators, and the Federal Mediation and Conciliation Service, support that conclusion. The AAA requires its arbitrators to abide by the Code of Professional Responsibility for Arbitrators of Labor Management Disputes.[7] Under section 2(B)(1), arbitrators presiding over labor-management disputes are required to disclose (1) "any current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve" and (2) "any pertinent pecuniary interest."[8] Additionally, section 2(B)(3) states that "[a]n arbitrator must not permit personal relationships to affect decision-making."[9]

The Court of Chancery noted that all the cases cited by both parties involved situations where the arbitrator had a personal relationship or financial interest with a party, an agent of a party, or an attorney of a party, and that none of the cited cases involved a situation where the arbitrator's personal life experiences constituted the basis for the alleged bias or partiality. Since the alleged bias in this case did not involve a personal or financial relationship, the Court of Chancery held that it did not compromise the integrity of the arbitration proceeding. The Court of Chancery concluded: "So I do not think that this type of affinity—potential affinity—is the type of thing that taints a proceeding or would require disclosure." DTC challenges that conclusion in this appeal.

### Evident Partiality Standard

*Commonwealth Coatings Corp. v. Cont'l Cas. Co.* is the leading case addressing arbitrator disclosure and is relied upon by DTC in this appeal.[10] *Commonwealth Coatings* involved a dispute between a prime contractor and a subcontractor. The member of the three-person arbitration panel selected as a "neutral" was an engineering consultant. The prime contractor was one of the engineering consultant's regular customers. As the Supreme Court explained, "[a]n arbitration was held, but the facts concerning the close business connections between the third arbitrator and the prime contractor were unknown to [the other party] and were never revealed to it by this arbitrator, by the prime contractor, or by anyone else until after an award had been made."[11] In a plurality decision by Justice Black, the Supreme Court stated:

[A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards

---

7. The Code of Professional Responsibility is published by the National Academy of Arbitrators, American Arbitration Association, and Federal Mediation and Conciliation Service.

8. Code of Professional Responsibility for Arbitrators of Labor-Management Disputes, § 2(B)(1)(2007).

9. *Id.* at § 2(B)(3).

10. *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 146–50, 89 S.Ct. 337, 21 L.Ed.2d 301 (plurality opinion), *reh'g denied*, 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1969).

11. *Id.* at 146.

that might reasonably be though biased against one litigant and favorable to another.[12]

The plurality, therefore, vacated the award on the ground that the neutral arbitrator demonstrated "evident partiality" in failing to disclose his prior relationship with one of the parties. Justice White's concurring opinion stated that he joined in Justice Black's opinion. However, Justice White's concurring opinion limited Justice Black's statement in the plurality opinion about the "appearance of bias" as follows: "[t]he Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges."[13]

Ever since *Commonwealth Coatings* was decided, it has been generally accepted that an arbitrator's failure to disclose a substantial relationship with a party or a party's attorney justifies vacatur under an "evident partiality" standard.[14] Nevertheless, courts are divided on what constitutes "evident partiality."[15] Some courts follow Justice Black's plurality opinion in *Commonwealth Coatings*, by adopting a standard whereby a failure to disclose may be grounds for vacatur of an arbitration award if the undisclosed relationship creates an appearance or impression of bias.[16] In other courts, however, this standard is limited in favor of a more narrow reasonableness standard,[17] requiring "more than a mere appearance of bias,"[18] such that an award will be vacated where the undisclosed relationship would lead a reasonable person to conclude that the arbitrator actually lacked impartiality.[19]

Most courts have concluded that evident partiality requires more than an appearance of bias but less than actual bias.[20]

**12.** *Id.* at 150.

**13.** *Id.* (White, J., concurring).

**14.** *See, e.g., Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir.1996) ("In nondisclosure cases, vacatur is appropriate where the arbitrator's failure to disclose information gives the impression of bias in favor of one party.").

**15.** Deseriee A. Kennedy, *Predisposed with Integrity: The Elusive Quest for Justice in Tripartite Arbitrations*, 8 Geo. J. Legal Ethics 749, 773–76 (1995).

**16.** *See, e.g., Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157, 159 (8th Cir.1995) (noting uncertainty among courts of appeals following the *Commonwealth Coatings* decision).

**17.** *See, e.g., Gianelli Money Purchase Plan & Trust v. ADM Investor Servs. Inc.*, 146 F.3d 1309, 1312 (11th Cir.1998) (explaining awards may be vacated only when an actual conflict exists or where a failure to disclose offends the reasonable person standard); *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 433 (11th Cir.1995) (stating that the mere appearance of bias is insufficient to vacate an arbitration award); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2d Cir.1984) (adopting a reasonable person standard); *Int'l Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551 (2d Cir.1981) (noting that appearance of bias does not necessarily rise to evident partiality).

**18.** *Health Svcs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992) (noting that arbitrators often have "interests and relationships that overlap with the matter they are considering" and "[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator" (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 173 (2d Cir. 1984))).

**19.** *See, e.g., Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir.2000); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir.1993).

**20.** *See Health Svcs. Mgmt. Corp. v. Hughes*, 975 F.2d at 1264 (holding that relationship between arbitrator and party must be "so intimate—personally, socially, professionally, or financially—as to cast serious doubt on the arbitrator's impartiality" (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir.1983))); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989)

The evolving standard of judicial review is that a reasonable person would have to conclude that a neutral arbitrator was partial or biased.[21] In *Kaplan v. First Options of Chicago, Inc.*,[22] the Third Circuit Court of Appeals recognized that after *Commonwealth Coatings* the proper standard for considering a claim of arbitrator bias is "evident partiality" and joined the courts that have adopted the reasonable person test. The Third Circuit stated:

> In order to show "evident partiality," "the challenging party must show 'a reasonable person would have to conclude that the arbitrator was partial' to the other party to the arbitration." "Evident partiality" is strong language and requires proof of circumstances "powerfully suggestive of bias." [23]

In *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*,[24] the Court of Chancery also recognized and applied the "evident partiality" standard arising from *Commonwealth Coatings* and adopted the reasonable person test. The Court of Chancery stated:

> In the wake of *Commonwealth Coatings*, it is almost universally accepted that an

arbitrator's failure to disclose a *substantial relationship with a party or a party's attorney* justifies vacatur under the evident partiality standard. Judges have spilled many words on the pages of the federal reporters trying to put this standard into simple terms, but most agree that an arbitrator's nondisclosure of a relationship [with a party or the party's attorney] substantial enough to create a reasonable impression of bias will ordinarily dictate vacatur.[25]

In *Beebe*, the Court of Chancery found that the reasonable person test was satisfied where the arbitrator, a lawyer, failed to disclose that one of the corporate parties to an arbitration he heard was represented by a law firm that was simultaneously representing the arbitrator in litigation in a Delaware court.[26]

DTC characterizes the Court of Chancery's opinion in *Beebe* as calling for a strong pro-disclosure policy for arbitrators. DTC argues that this Court should follow the Second Circuit's holding in *Sanko S.S. Co. v. Cook Indus. Inc.*: [27]

(rejecting the exacting standard of "proof of actual bias"); *Sheet Metal Workers Int'l Ass'n Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745–46 (9th Cir.1985) (adopting a "reasonable impression of partiality" standard); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d at 84 (suggesting that "proof of actual bias" would prove an insurmountable burden for moving party); *Aetna Cas. & Sur. Co. v. Grabbert*, 590 A.2d 88, 96 (R.I. 1991) (asserting that evident partiality requires a showing of "less than actual bias.").

21. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) (stating that arbitral awards can be set aside for conduct that creates "a reasonable appearance of bias"); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d at 146 (adopting a standard that "a reasonable person would have to conclude that an arbitrator was partial to the other party to the

arbitration") (internal quotation marks omitted); *Sheet Metal Workers Int'l Ass'n Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d at 746 (moving party must establish "reasonable impression of partiality"); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d at 84.

22. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir.1994).

23. *Id.* at 1523 n. 30 (citation omitted).

24. *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426 (Del.Ch.1999).

25. *Id.* at 434–35 (emphasis added).

26. *Id.* at 427.

27. *Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d 1260, 1263–64 (2d Cir.1973).

To be sure, the broad disclosure called for in *Commonwealth Coatings* does not require that an arbitrator "provide the parties with his complete and unexpurgated business biography." [28] But where dealings "might create an impression of possible bias," they must be disclosed. Indeed, it seems to us that the better practice is that arbitrators should disclose fully all their relationships with the parties, whether these ties be of a direct or indirect nature. Although some unnecessary disclosure may result, if arbitrators err on the side of disclosure, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award. [29]

The *Commonwealth Coatings* progeny of cases, including *Sanko*, set forth an evident partiality standard that confines post-arbitration judicial review to narrow issues essential to the integrity of the arbitration process. The practical effects of the evident partiality standard are to focus on the disclosure of an arbitrator's past and present personal or financial *relationships* with the parties and their representatives. That standard requires vacatur whenever an arbitrator fails to disclose a substantial relationship with a party, their agent, or their attorney that creates circumstances powerfully suggestive of bias. [30]

■ We agree that arbitrators should disclose all of their past and present personal or financial relationships with the parties, their agents, and their attorneys. We hold that to demonstrate evident partiality sufficient to require vacatur, however, the record must reflect that an arbitrator failed to disclose a substantial personal or financial relationship with a party, a party's agent, or a party's attorney that a reasonable person would conclude was powerfully suggestive of bias. [31] The question presented in this appeal is whether an undisclosed shared life experience is sufficient to constitute evident partiality and to require vacatur. [32]

DTC acknowledges that under Rule 17 and the applicable ethics rules, the Arbitrator in this case had no duty to disclose before the arbitration hearing commenced because he had no past or present personal or financial relationship with any party, their agent, or their attorney. Arbitrators are under an ongoing obligation, however, to disclose information they acquire that might make them partial. In addition to the rules for mandatory disclosure, the AAA's ethics rules also provide that "[i]f the circumstances requiring disclosure are not known to the arbitrator prior to acceptance of appointment, disclosure must be made when such circumstances become known to the arbitrator." [33] DTC contends that, when Bruckner's mother-in-law's death from cancer became known during the hearing, the Arbitrator was re-

**28.** *Commonwealth Coatings v. Cont'l Cas. Co.*, 393 U.S. at 151, 89 S.Ct. 337; *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268 (2d Cir.1971).

**29.** *Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d at 1263–64 (emphasis added).

**30.** *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d at 1523 n. 30; *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d at 438–39.

**31.** *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d at 435; *Kaplan v. First*

*Options of Chicago, Inc.*, 19 F.3d at 1523 n. 30.

**32.** *See* Merrick T. Rossein and Jennifer Hope, *Disclosure and Disqualification Standards for Neutral Arbitrators: How Far to Cast the Net and What is Sufficient to Vacate Award*, 81 St. John's L.Rev. 203, 209–13, 219, 228 (2007).

**33.** Code of Professional Responsibility for Arbitrators of Labor–Management Disputes, § 2(B)(4).

quired to disclose his shared life experience with his wife's death from cancer.

In deciding whether an arbitrator's personal life experiences should be disclosed either before acceptance of an appointment or during the course of arbitration proceedings, the rules for judicial officers' recusal and disqualification are not binding on arbitrators.[34] However, they are didactic. The general rule is that a judge "is not disqualifiable because of his [or her] own life experiences."[35] "[L]ifetime experiences, good or bad, are something all judges bring with them to the bench, and only in unusual circumstances would a judge be required to recuse" because of a shared life experience.[36] "Obviously a judge is not disqualified from presiding at an automobile accident trial merely because he was once himself in an automobile accident. Nor is a judge disqualified from trying a divorce case either because he is himself married or divorced, or from trying a contested adoption case because he has either natural children or adopted children."[37]

■■■■ The party seeking the disqualification of an arbitrator bears the burden of establishing the basis for a recusal. Other courts have concluded that to set aside an award for evident partiality, the moving party must identify an *undisclosed relationship* between the arbitrator and a party or the party's agent that is "so intimate—personally, socially, professionally or financially—as to cast serious doubt on [the arbitrator's] impartiality."[38] We agree. In addition, the alleged past or present conflicting personal or financial relationship with the arbitrator "must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative."[39]

■■■■ The alleged bias or partiality which DTC attributes to the Arbitrator in this matter fails to meet the "evident partiality" standard. The mere fact that an arbitrator may share a personal life experience with a party or a party's agent is legally insufficient to constitute a substantial relationship that a reasonable person would conclude is powerfully suggestive of bias. We hold that arbitrators are not disqualified because of their shared life experience with a party or a party's agent and that the disclosure of a shared life experience is not mandatory. In this case, the Arbitrator had no obligation to disclose that his wife had recently died from cancer.

### *Conclusion*

The judgment of the Court of Chancery is affirmed.

---

**34.** *Commonwealth Coatings v. Cont'l Cas. Co.,* 393 U.S. at 149, 89 S.Ct. 337.

**35.** *Johnson v. Salem Corp.,* 189 N.J.Super. 50, 458 A.2d 1290, 1295 (App.Div.1983); Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges (2d ed. 2007).

**36.** *Bravo Santiago v. Ford Motor Co.,* 206 F.Supp.2d 294, 297 (D.P.R.2002). *See id.* at 298 (holding a judge was not disqualified from presiding over a case involving injuries sustained in an automobile accident merely because, years before, he sued a different car manufacturer for injuries.).

**37.** *Johnson v. Salem Corp.,* 458 A.2d at 1295.

**38.** *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d at 680.

**39.** *Health Svcs. Mgmt. Corp. v. Hughes,* 975 F.2d at 1264 (quoting *Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196, 1200 (7th Cir. 1980)); *see also Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir.1982).