# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| Thomas J. Gilmartin and Jill Singer, | ) | C.A. No. 11356-MA |
| Plaintiffs, | ) | |
| v. | ) | |
|  | ) | |
| Whaley Royce, LLC, | ) | |
| Defendant. | ) | |

## MASTER'S REPORT

Date Submitted:  July 6, 2016
Draft Report:  October 7, 2016
Final Report:  March 28, 2017

This case involves a real estate contract that required disputes between the parties to be resolved by arbitration.   Buyer requested arbitration after seller refused to return buyer's deposit when he sought to cancel the contract.  Following a hearing, the arbitrator found in favor of seller, awarding seller the deposit as liquidated damages, plus attorney fees and costs.   Dissatisfied with the outcome of the arbitration, buyer filed a complaint in this Court, alleging fraud and seeking to vacate the arbitrator's award.   Seller now has moved to dismiss the complaint as an impermissible collateral attack on the merits of the arbitrator's decision, among other grounds.   For the reasons that follow, I recommend that the Court dismiss buyer's complaint in its entirety.

Factual and Procedural Background[1]

On October 31, 2013, Plaintiff Thomas J. Gilmartin and Defendant Whaley Royce, LLC ("Whaley Royce" or "Seller") entered into a contract for the purchase of Lot 27 in a single family home community under development in Dagsboro, Delaware.[2] The contract called for a deposit of ten percent of the purchase price upon execution, but provided a two-day due diligence period.[3] If Gilmartin notified Seller within this time period that he no longer wanted to proceed with the contract, it would be declared null and void and Seller would refund Gilmartin's deposit. Otherwise, the deposit and all other monies paid to Seller would be nonrefundable in the event of Gilmartin's default.[4]

On the same day he signed the contract, Gilmartin also executed several addenda to the contract. The first addendum provided that "this contract is subject to buyer receiving his Final 9/11 First responder settlement on or before 12/2/2013. If buyer does not receive his final settlement agreement by 12/2/2013 all deposit monies, at the buyers request, will be returned" ("Zadroga Funds Addendum").[5]

_____

[1]This factual background is based on the allegations in Plaintiffs' Amended Verified Complaint and the documents incorporated therein as exhibits. Docket Item "DI" 1.
[2] Amended Verified Complaint, Ex. C ("Ellis Point Purchase Agreement").
[3] *Id.* at ¶¶ 3-4.
[4] *Id.* at ¶ 4.
[5] Amended Verified Complaint, Ex. E. See Letter dated Feb. 7, 2014, to Gilmartin from the September 11th Victim Compensation Fund ("VCF") explaining that under the Zadroga Act, total funding for the VCF was capped and only some of the VCF's funding was available during the VCF's first five years. Payments were to be

Another addendum acknowledged that the buyer did not have the full deposit and required a deposit of $1,000 upon the execution of the contract, and the balance of deposit in the amount of $63,670 by December 2, 2013 ("Deposit Schedule Contingency Addendum").[6] A third addendum executed by Gilmartin, which was also executed by Plaintiff Jill Singer, purported to include Singer as an additional buyer under the terms of the contract ("Add Buyer Addendum").[7] The Add Buyer Addendum was not executed by Seller. On October 31st, Singer wrote a check to Seller in the amount of $1,000 as an initial deposit on Lot 27.[8]

On November 30, 2013, Gilmartin and Singer executed another addendum releasing "[a]ny or all contingencies for the purchase of" Lot 27 ("Revocation of Contingencies Addendum").[9] In September 2014, a dispute arose between the parties concerning the contract and Gilmartin sought the return of his deposit and termination of the contract, citing the Zadroga Funds Addendum.[10] Whaley Royce refused to return Gilmartin's deposit and claimed the contingency had been valid only until

---

distributed to claimants in at least two installments and each claimant might receive a total payment that was less than the amount of that claimant's calculated loss. *Id.*, Ex. D.

[6] Amended Verified Complaint, Ex. L.
[7] Amended Verified Complaint, Ex. F.
[8] Amended Verified Complaint, Ex. G.
[9] Amended Verified Complaint, Ex. R.
[10] Amended Verified Complaint, Ex. S & Ex. T (Letters dated September 22, 2014 and October 6, 2014 from Douglas M. Herman, Esq. to K. William Scott, Esq. re: Ellis Point Unit 27).

December 2, 2013, after which it was waived.[11]   Gilmartin then sought arbitration through the American Arbitration Association ("AAA") in accordance with Paragraph 37 of the contract.[12]

During the arbitration process, Gilmartin was represented by counsel and Whaley Royce was represented by a non-lawyer.[13] The parties selected Christopher I. McCabe, Esquire as their arbitrator ("Arbitrator") from a list of five neutral arbitrators provided by the AAA.[14]   Singer was not given notice of the arbitration hearing and, although she traveled with Gilmartin to the hearing, Singer was excluded from the proceedings by Arbitrator.  On May 4, 2015, Arbitrator issued his written award, declaring that Whaley Royce was entitled to retain all deposit monies as liquidated damages, and be reimbursed by Gilmartin for all costs and expenses, including reasonable attorneys' fees incurred by Whaley Royce in the arbitration action.[15]   Gilmartin was also required to pay the AAA's administrative fees and Arbitrator's compensation.[16]

---

[11] *Id.*

[12] Amended Verified Complaint, Ex. C & Ex. Q (Letter dated January 22, 2015 from the American Arbitration Association to Victoria Petrone, Esq. and Nick Hammonds re:  Case Number 01-14-0002-2045 Thomas Gilmartin -vs- Whaley Royce, LLC).

[13] Amended Verified Complaint, Ex. Q.

[14] Amended Verified Complaint, Ex. O & Ex. P.

[15] Amended Verified Complaint, Ex. M.

[16] *Id.*

On July 31, 2015, Gilmartin and Singer filed a *pro se* complaint to vacate the arbitration award.[17]  On October 2nd, Whaley Royce filed a motion to dismiss the complaint.[18]  An attorney subsequently filed an amended complaint on March 18, 2016,[19] and the parties thereafter briefed the motion to dismiss.  Oral argument took place on July 6, 2016.[20]

The Complaint

Five causes of action are alleged in the amended complaint.  The first count is based on fraud.  Plaintiffs allege that Whaley Royce knew they could not afford to purchase the property unless Gilmartin received his September 11th settlement funds.  Plaintiffs further claim that Whaley Royce never intended to refund their deposit money, as evidenced by the fact that Whaley Royce induced them to execute the Revocation of Contingencies Addendum purporting to nullify the Zadroga Funds Addendum.  In addition, Plaintiffs allege that the arbitration award was procured by Whaley Royce's "improper, fraudulent and bad faith dealings with these unsophisticated Plaintiffs and by manipulation of the Arbitration proceeding to hold plaintiffs to standards designed for Commercial and/or Construction Industry Professionals."[21]

---

[17] DI 1.
[18] DI 8.
[19] DI 21.
[20] DI 32.
[21] Amended Verified Complaint, at ¶ 81.

In their second count, Plaintiffs allege that Arbitrator was unduly and impermissibly biased in favor of Whaley Royce because of his history of representing construction industry professionals and entities. Although Plaintiffs had received Arbitrator's biography from the AAA,[22] they allege that it did not accurately portray Arbitrator's employment experience or the nature of his professional practice. According to Plaintiffs, his law firm's website revealed that Arbitrator primarily represented construction professionals and was likely concerned with drafting the sort of "one-sided contract" used by Whaley Royce.[23]

In their third count, Plaintiffs allege that Arbitrator exceeded or imperfectly executed his powers by: (a) using the AAA Commercial Arbitration Rules rather than the AAA Construction Industry Arbitration Rules that were required by the parties' contract or, what would have been preferable to Plaintiffs, the AAA Consumer Arbitration Rules that are more suited to unsophisticated consumers like themselves ; (b) excluding Singer from the arbitration proceedings when she was a material and necessary party to the contract and the arbitration; (c) allowing the arbitration to proceed when Whaley Royce, a limited liability company, appeared without counsel in violation of Delaware law; (d) failing to provide any reason or explanation for his failure to credit the Zadroga Funds Addendum as an integral part of the contract that could not be waived or revoked by any subsequent document; (e) failing to allow

---

[22] Amended Verified Complaint, Ex. P.

Singer to take part in the arbitration even though she was present and desired to take part in the proceedings; and (f) failing to enter a default against Whaley Royce when it appeared without legal counsel.

In their fourth count, Plaintiffs allege that the contract impermissibly required arbitration under the AAA Construction Industry Arbitration Rules rather than the AAA Consumer Arbitration Rules. Finally, Plaintiffs allege in their fifth count that, by virtue of the internally incompatible operation of the Zadroga Funds Addendum and the Revocation of Contingencies Addendum, there could not have been a valid arbitration agreement between the parties.

## The Issues

Whaley Royce argues that Plaintiffs waived their right to challenge the contract and arbitration clause because Gilmartin initiated and participated in the AAA arbitration proceedings. Even if Plaintiffs' claims have not been waived, Whaley Royce contends that the arbitration clause is valid and enforceable because the contract was not a standard form contract, and could have been cancelled during the due diligence period if Gilmartin had objected to the arbitration clause. Furthermore, the arbitration clause was not unfairly structured and the type of contract between the parties did not meet the criteria for application of the AAA Consumer Arbitration Rules. Whaley Royce also argues that: (a) Plaintiffs' claim of fraud does not meet

---

[23] Amended Verified Complaint, at ¶ 57.

the heightened pleading standard of Court of Chancery Rule 9(b) because the allegations lack specificity; (b) Plaintiffs fail to state a claim under 10 *Del. C.* § 5714(a)(2) because there is no allegation that Arbitrator had a substantial personal or financial relationship with any party or its agent; and (c) Plaintiffs fail to state a claim under Section 5714(a)(3) that Arbitrator exceeded his powers or imperfectly executed them because (i) there is no allegation that the use of the AAA Commercial Rules prejudiced Plaintiffs, (ii) Singer was not a party to the contract, was not entitled to notice, and was properly excluded from the proceedings, and (iii) arbitration is not a court proceeding and, therefore, Whaley Royce was not required to be represented by counsel. Finally, Whaley Royce argues that AAA rules only require an award to be in writing and to provide a financial breakdown of any monetary reward; there is no requirement that an arbitrator provide an explanation or detailed opinion related to his decision.

Plaintiffs oppose the motion to dismiss, arguing that they have sufficiently pleaded a claim of fraud in the inducement by Whaley Royce. First, Plaintiffs contend that when Whaley Royce accepted Plaintiffs' offer to purchase Lot 27, knowing that Plaintiffs could not afford the property without the full payment of Gilmartin's benefits from the September 11th fund, Whaley Royce breached its duty to negotiate and enter into contracts in good faith. Whaley Royce's subsequent mischaracterization of the intent of the Zadroga Funds Addendum to avoid its

consequences compounded this breach, according to Plaintiffs, because there is no provision or language in the Zadroga Funds Addendum that rendered it contingent or nullified if not exercised prior to December 2, 2013. Plaintiffs contend that Whaley Royce never intended to refund their deposit because Whaley Royce proffered the Revocation of Contingencies Addendum to Plaintiffs without clearly stating and warning that it would rely on this document to assert the nullification of the Zadroga Funds Addendum. Accordingly, Plaintiffs claim they relied on the promises of Whaley Royce to their detriment, and Whaley Royce induced them to enter a contract that it had every reason to know they could not afford. Plaintiffs also argue that the arbitration award was procured by Whaley Royce's "improper, fraudulent and bad faith dealings" with them, and Whaley Royce "manipulated the Arbitration proceeding" to deprive Singer of an opportunity to be heard and Plaintiffs of their deposit funds.[24]

Plaintiffs also argue that they have sufficiently pleaded a cause of action for arbitrator partiality because the AAA biography differed in material aspects from the curriculum vitae obtained from the website of Arbitrator's law firm. As a result, Plaintiffs claim they were denied the benefit of their bargain because they were unable to make an informed selection of an unbiased arbitrator. Instead, they selected one who, by virtue of his employment and practice primarily representing

---

[24] Plaintiffs' Brief in Opposition to Defendant Whaley Royce, LLC's Motion to

construction industry professionals and entities, was unduly and impermissibly biased in favor of Whaley Royce and against them.

In addition, Plaintiffs argue that they have pleaded a cognizable cause of action of overreaching by Arbitrator, who used AAA Commercial Arbitration Rules rather than AAA Construction Industry Arbitration Rules as required by the parties' contract, thereby depriving the parties the benefit of their bargain. Also, Arbitrator was not authorized to overlook the law requiring a limited liability company to have legal representation in a quasi-judicial proceeding or to exclude Singer from the proceedings.

Plaintiffs argue that Arbitrator was provided a complete contract that included, among other documents, the Zadroga Funds Addendum and the Add Buyer Addendum, yet he so imperfectly exercised his powers as to render no final and definite award on the subject matter. This was demonstrated by the fact that Whaley Royce's interpretation of the Revocation of Contingencies Addendum requires a construction of the contract that is internally incompatible, rendering the Zadroga Funds Addendum meaningless. According to Plaintiffs, Arbitrator had sufficient proof to support their contentions that Singer was a party to the contract and that the Zadroga Funds Addendum demonstrated the parties understood the contract would be nullified and deposit monies would be refunded at Gilmartin's request if the

Dismiss Plaintiff's Complaint pursuant to Ct. Ch. Rule 12(b)(6), at p. 20. DI 24.

September 11th settlement funds were not received by December 2, 2013. Nevertheless, Arbitrator ignored these documents, impermissibly excluded Singer from the hearing despite her protests, and failed to enter an award in accord with the language and clear intent of the Zadroga Funds Addendum. Finally, Plaintiffs argue that they have adequately pleaded and demonstrated that the AAA rules expressly required by the contract were not followed.

## Standard of Review

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must assume the truthfulness of all well-pleaded allegations and give the plaintiff the benefit of all reasonable inferences that can be drawn from its pleadings.[25] Nevertheless, "the court need not accept inferences or factual conclusions unsupported by specific allegations of fact,"[26] nor must it draw unreasonable inferences in favor of the non-moving party.[27]

## Analysis

---

[25] *Solomon v. Pathe Communications Corp.*, 672 A.2d 35, 38 (Del. 1996) (citing *Grobow v. Perot*, 539 A.2d 189, 187 n. 6 (Del. 1988); *In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991)).

[26] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*, 2011 WL 1348438, at * 7 (Del. Ch. April 8, 2011) (citing *Ruffalo v. Transtech Serv. P'rs Inc.,* 2010 WL 3307487 at *10 (Del. Ch. Aug. 23, 2010)).

[27] *CSH Theatres, LLC v. Nederlander of San Francisco Assoc.,* 2015 WL 1839684, at * 5 (Del. Ch. April 21, 2015) (citing *Price v. E.I. DuPont de Nemours & Co., Inc.,* 26 A.3d 162, 166 (Del. 2011)).

In their complaint, Plaintiffs have attacked the arbitration award on several fronts. First, they challenge the validity of the entire contract, claiming that it had been fraudulently induced by Whaley Royce. Second, they challenge the validity of the contract's arbitration clause and, more narrowly, the clause's requirement of arbitration under the AAA Construction Industry Arbitration Rules. Finally, Plaintiffs directly attack Arbitrator's award on the following grounds: (a) manipulation, bad faith, and fraud in its procurement; (b) partiality of the arbitrator; (c) Arbitrator's overreaching and exceeding his powers by: (i) excluding Singer from the hearing, (ii) using the AAA Commercial Arbitration Rules rather than the AAA Construction Industry Arbitration Rules as required by the parties' contract, (iii) allowing Whaley Royce to appear without counsel, and (iv) failing to provide any explanation for Arbitrator's failure to credit the Zadroga Funds Addendum.

Paragraph 37 of the contract, which is captioned "Dispute Resolution/Arbitration," provides:

> If any dispute, claim or controversy arises related to this Agreement, the Limited Builders Warranty (as defined in the attached Addendum), or other agreements, communications, or dealings involving Buyer, or the construction or condition of the Property including, but not limited to, disputes concerning breach of contract, express and implied warranties, personal injuries and/or illness, mold related claims, representations and/or omissions by Seller or its representatives or agents, on-site and off-site conditions and all other torts and statutory causes of actions ("Claims"), the Seller and Buyer agree to attempt to settle the dispute first through direct discussions. In the event the dispute cannot be resolved through direct discussions, the parties agree to settle their differences by binding arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, applying the

substantive laws of the State of Delaware, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The location of the arbitration shall be the location of the Community or any other location mutually agreed to by the Seller and Builder. Once a party files a request for arbitration with the other party and with the American Arbitration Association, the parties agree to commence such arbitration within sixty (60) days of filing of the request.

The parties agree that the award or order rendered by the arbitrator or arbitrators shall be final and binding and enforceable in a court of law or equity. The prevailing party in any dispute arising out of or relating to this Agreement or its breach shall be captioned to recover from the other party reasonable attorney's fees, costs and expenses incurred by the prevailing party in connection with such dispute resolution process. Notwithstanding any other provision of this Agreement to the contrary, all rights, remedies, claims or actions arising out of or connected with this Agreement, including any claims of default, breach or conduct giving rise to suspension of payment or services, shall be solely and conclusively resolved by the Dispute Resolution provisions of this Dispute Resolution Section. Any attempt to circumvent or disregard the dispute resolution procedure as delineated in this Agreement by either party shall constitute default of this Agreement. Buyer hereby waives the right to a proceeding in a court of law (including without limitation a trial by jury) for any claims or counterclaims brought pursuant to this Agreement. The provisions of this section shall survive the expiration or earlier termination of this Agreement or the settlement under this Agreement, as applicable, and shall not be merged or extinguished by any settlement, closing, payment of the Purchase Price or by execution and delivery of any deed.[28]

The broad language of this arbitration clause precludes any challenge by Gilmartin and Singer to the merits of the arbitration award.[29] In his award, Arbitrator declared that Whaley Royce was entitled to retain Gilmartin's deposit monies as liquidated damages.[30] The only reasonable inference to be drawn from this award is

---

[28] Amended Verified Complaint, Ex. C at ¶ 37.
[29] *See Malekzadeh v. Wyshock*, 611 A.2d 18, 20 (Del. Ch. 1992) (citing *James Julian, Inc. v. Raytheon Service Co.*, 424 A.2d 665 (Del. Ch. 1980)).
[30] Amended Verified Complaint, Ex. M.

that Arbitrator found Gilmartin to have breached the contract. Plaintiffs' current attempt to invalidate the contract by claiming fraud in the inducement is a "dispute arising out of or relating to this agreement or its breach" which must be submitted to Arbitration.[31] Plaintiffs' fraud claim in Count I, therefore, is an "impermissible collateral attack on the award itself,"[32] and should be dismissed as waived.

Count I also includes an allegation that Whaley Royce procured the arbitration award by "improper, fraudulent and bad faith dealings" with Plaintiffs and "manipulation of the Arbitration proceeding."[33] Under Delaware law, the Court shall vacate an arbitration award that "was procured by corruption, fraud or other undue means[.]"[34] However, Rule 9(b) provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud of mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."[35] To satisfy Rule 9(b), a complainant must allege: "(1) the time, place, and contents of the false representation; (2) the identity of the person

---

[31] *See Farnsworth v. Towboat Nantucket Sound, Inc.* 790 F.3d 90, 96 (1st Cir. 2015) (challenges to the validity of an entire contract which contains an arbitration clause are for the arbitrator to decide) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395 (1967)).
[32] *Pryor v. IAC/InterActiveCorp*, 2012 WL 2046827, at *6 (Del. Ch. June 7, 2012).
[33] Amended Verified Complaint, at ¶ 81.
[34] 10 *Del. C.* § 5714(a)(1).
[35] Ct.Ch.R. 9(b).

making the representation; and (3) what the person intended to gain by making the misrepresentations."[36]

In their complaint, Plaintiffs allege that Whaley Royce was aware Plaintiffs were unable to purchase the home unless Gilmartin received his full September 11th settlement award by December 2, 2013, and was advised that Gilmartin was only going to receive ten percent of his award by December 2, 2013. Whaley Royce also was aware that Plaintiffs would put down approximately ten percent on the purchase price of the home. Plaintiffs relied on Whaley Royce's "assurances" and the language of the contract and the Zadroga Funds Addendum,[37] and believed that upon advising Whaley Royce that Gilmartin's full award had not been paid by December 2, 2013, and by demanding the return of the deposit funds, the full deposit would be returned to them. Finally, the complaint alleges that Whaley Royce never intended to refund Plaintiffs' deposit money because it subsequently induced Plaintiffs to execute the Revocation of Contingencies Addendum purporting to nullify the Zadroga Funds Addendum, and that Whaley Royce entered the contract with two unsophisticated layperson buyers "knowing they would not refund Plaintiffs' deposit money even

---

[36] *CSH Theatres, LLC*, 2015 WL, at * 22 (quoting *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)).
[37] Amended Verified Complaint, at ¶ 75.

upon their demand for such refund and notwithstanding the language of the Zadroga Funds Addendum."[38]

The complaint does not identify the time, place or contents of the false representation. Nor does it identify the representative of the limited liability company who gave the alleged "assurances" to Plaintiffs. Plaintiffs cite the Revocation of Contingencies Addendum, executed on November 30, 2013, as proof that Whaley Royce never intended to refund their deposit money. However, a plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud by alleging that a contracting party never intended to perform its obligations."[39] Such a claim requires a misrepresentation of present fact. Nowhere does the complaint allege specific facts that would lead to the reasonable inference that Whaley Royce never intended to return Plaintiffs' deposit at the time the parties executed the contract on October 31, 2013.

Plaintiffs also accuse Whaley Royce of manipulating the arbitration proceedings to hold them to standards designed for professionals in the commercial or construction industry. Nowhere in the amended complaint do Plaintiffs allege specific facts from which the Court could draw a reasonable inference that Whaley Royce manipulated the arbitration proceedings in this or any manner. To the

---

[38] *Id.* at ¶¶ 68-80.

contrary, the contract signed by the parties called for the use of AAA Construction Industry Arbitration Rules.[40]

The allegations contained in Paragraph 81 of the amended complaint are wholly conclusory and fail to state a claim for relief. They are also an impermissible collateral attack on the merits of the arbitration award. Therefore, I recommend that Count I in its entirety be dismissed.

In Count II, Plaintiffs allege that Arbitrator was not neutral, but instead was "unduly and impermissibly biased in favor of [Whaley Royce] and against Plaintiffs" by virtue of his employment and professional practice representing construction industry professionals and entities.[41] According to Plaintiffs, the biographical information received from the AAA omitted Arbitrator's work experience and professional practice, thereby depriving Plaintiffs of the benefit of their bargain. As a result, they allegedly received an "improperly and impermissibly biased outcome" at arbitration.[42]

An arbitration award shall be vacated if "there was evident partiality by an arbitrator appointed as a neutral … or corruption in any of the arbitrators or

---

[39] *CSH Theatres, LLC*, 2015 WL 1839684, at \*22 (quoting *Narrowstep, Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at \* 15 (Del. Ch. Dec. 22, 2010) (quoting *Iotex Commc'ns, Inc. v.Defries*, 1998 WL 914265, at \* 4(Del. Ch. Dec. 21, 1998)).
[40] Amended Verified Complaint, Ex. C at ¶ 37.
[41] Amended Verified Complaint, at ¶ 84.
[42] *Id.* at ¶ 86.

misconduct prejudicing the rights of any party[.]"[43]  In order to demonstrate evident partiality there must be proof that an arbitrator "failed to disclose a substantial personal or financial relationship with a party, a party's agent, or a party's attorney that a reasonable person would conclude was powerfully suggestive of bias."[44] Nowhere do Plaintiffs allege that Arbitrator had a personal or financial relationship with Whaley Royce, its agent or attorney, and had failed to disclose this relationship. As a result, Plaintiffs fail to state a claim of evident partiality under 10 *Del. C.* § 5714(a)(2) that would warrant vacatur of the arbitrator's award.  Therefore, I recommend that the Court dismiss Count II.

In Count III, Plaintiffs seek to vacate the award under 10 *Del. C.* § 5714 (a) (3) on the ground that Arbitrator overreached and exceeded his powers by using the AAA Commercial Arbitration Rules rather than the AAA Construction Industry Arbitration Rules required by the contract.  The document dated May 4, 2015, constituting the Award of the Arbitrator, is attached to the amended complaint as Exhibit M.  At the head of this document are the words "American Arbitration Association Commercial Arbitration Tribunal."[45]  Underneath the caption, the preamble to the award states:

---

[43] 10 *Del. C.* § 5714(a)(2).
[44] *Delaware Transit Corp. v. Amalgamated Transit Union Local 842*, 34 A.3d 1064, 1072 (Del. 2011).
[45] Amended Verified Complaint, Ex. M.

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named Parties, and in accordance with the American Arbitration Association's Expedited Procedures of the Commercial Arbitration Rules, as Amended and Effective October 1, 2013, and having been duly sworn, and having duly considered the proofs and allegations of the Parties, AWARD as follows: [46]

The contract between the parties required arbitration to be administered by the AAA under its Construction Industry Arbitration Rules. A reasonable inference to be drawn from the above preamble is that Arbitrator deviated from the express terms of the parties' contract by employing another set of rules during the arbitration proceeding. However, while Plaintiffs allege that the parties were denied the benefit of their bargain, they fail to point to any specific rule or procedure that prejudiced them or that prevented Arbitrator from making "a final and definite award on the subject matter submitted."[47] Instead, Plaintiffs complain that Arbitrator should have required the parties to proceed instead under an entirely different set of rules, i.e., the AAA Consumer Arbitration Rules. Therefore, I recommend that this claim be dismissed as Plaintiffs have failed to state a claim for relief under Section 5714(a)(3).

Plaintiffs also allege that Arbitrator overreached and exceeded his powers by excluding Singer, a material and necessary party to the contract, from the arbitration proceedings. However, whether Singer was a party to the contract was a question for

---

[46] *Id.*

[47] *See* 10 *Del. C.* § 5714(a)(3).

the Arbitrator to decide, given the broad language of the arbitration clause.[48]  Under both the AAA Commercial Arbitration Rules and the AAA Construction Industry Arbitration Rules, an arbitrator has the discretion to determine the attendance of any person "other than a party or other essential person."[49]  If Singer was excluded from the arbitration proceeding despite having protested that she was a party, then the only reasonable inference to be drawn from these allegations is that Arbitrator had determined Singer was not a party or another essential person.  Since there is no allegation that Gilmartin objected to Singer's exclusion or sought to postpone the hearing after her exclusion, there is no basis to infer that Gilmartin suffered

---

[48] *See CVD Equipment Corp. v. Development Specialists, Inc.*, 2015 WL 4506052, at *2 (Del. Ch, July 23, 2015).

[49] Rule 25 of the AAA Commercial Arbitration Rules states:

> The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary.  Any person having a direct interest in the arbitration is entitled to attend hearings.  The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness.  It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

Amended Verified Complaint, Ex. J.  Rule 26 of the AAA Construction Industry Arbitration Rule states:

> The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary.  Any person having a direct interest in the arbitration is entitled to attend hearings.  The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness.  It shall be discretionary with the arbitrator to determine the propriety of the attendance of any person other than a party and its representative."

Amended Verified Complaint, Ex. I.

substantial prejudice as a result.[50]  In other words, Plaintiffs fail to allege sufficient grounds to vacate an award under 10 *Del. C.* § 5714(a)(4).[51]  Plaintiffs' attack on the Arbitrator's decision to exclude Singer is simply another impermissible attack on the merits of the Arbitrator's award, and should be dismissed.

During the arbitration proceeding, Whaley Royce was represented by a non-attorney, and Plaintiffs accuse the Arbitrator of having exceeded his powers by allowing the arbitration to proceed without legal counsel representing Whaley Royce. Delaware law provides that parties have a right to be represented by an attorney during an arbitration proceeding or hearing.[52]  While Plaintiffs correctly point out that corporations and limited liability companies must be represented by an attorney in court proceedings,[53] Plaintiffs have failed to demonstrate that Delaware law requires a limited liability company to be represented by an attorney in a private arbitration proceeding.  Since Whaley Royce appeared and participated in the arbitration

---

[50] *See M3 Healthcare Solutions v. Family Practice Assoc., P.A.,* 996 A.2d 1279, 1284 (Del. 2010).

[51] 10 *Del C.* § 5714(4) provides for vacating an award where:

> The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor, or refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 5706 of this title, or failed to follow the procedures set forth in this chapter, so as to prejudice substantially the rights of a party, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection[.]

[52] *See* 10 *Del. C.* § 5707.

[53] *See Poore v. Fox Hollow Enterprises*, 1994 WL 150872, at *2 (Del. Super. March 29, 1994).

proceeding, there was no basis for an entry of default against Whaley Royce. Therefore, Plaintiffs have failed to state a claim for relief under Section 5714(a)(3).

In his award, Arbitrator did not provide any reason for his decision to deny Gilmartin's claim and to award Whaley Royce liquidated damages in the form of the retained deposit monies. In a conclusory fashion, Plaintiffs allege that Arbitrator's failure to provide an explanation for his award is proof of Arbitrator's imperfect execution of his powers such that a final and definite award upon the subject matter submitted was not made. To buttress their allegations, Plaintiffs repeat their attacks on the merits of the arbitration award.[54] However, an arbitrator need not state the grounds for his decision,[55] and nothing in the arbitration clause of the contract or any other written agreement between the parties required Arbitrator to set forth his reasons for the award.[56] Therefore, I recommend that the Court dismiss this claim because Plaintiffs fail to state a claim for vacatur under 10 *Del. C*. § 5714(a)(3).

---

[54] In Paragraphs 93-99 of the Amended Verified Complaint, Plaintiffs reiterate these allegations: (1) Whaley Royce's interpretation of the Revocation of Contingencies Addendum requires a construction of the parties' contract that is internally incompatible and renders the Zadroga Funds Addendum meaningless; and (2) Arbitrator was provided a complete contract including the Zadroga Funds Addendum and was aware that Singer was a material and necessary party to the contract; nonetheless, Arbitrator refused to allow Singer to take part in the arbitration hearing even though she was present and desired to take part in the proceedings.

[55] *See Malekzadeh*, 611 A.2d at 22 (citing *Sargent v. Paine Webber, Jackson Curtis, Inc.,* 674 F.Supp. 9201 (D.D.C. 1987) , *reconsideration denied*, 687 F.Supp. 7 (1988)).

[56] *See Mansoory v. SC & A Construction, Inc*., 2009 WL 2140030, at **3-5 (Del.Ch. July 9, 2009).

In Counts IV and V of the amended complaint, Plaintiffs focus on the arbitration clause of the contract. In Count IV, Plaintiffs allege that the contract should not have required arbitration under the AAA Construction Industry Arbitration Rules because Plaintiffs were laypersons and consumers, and that the AAA Consumer Arbitration Rules should have been used instead during the arbitration proceedings. In Count V, Plaintiffs allege that the entire arbitration clause is invalid "[b]y virtue of the internally incompatible operation of [Zadroga Funds Addendum] and the Revocation of Contingencies Addendum[.]"[57] A challenge to the validity of an arbitration clause must be raised before submitting to arbitration or during the arbitration itself.[58] Gilmartin initiated the arbitration proceedings in this case. There is no allegation that Gilmartin ever objected to the arbitrability of his claims under the AAA's Construction Industry Arbitration Rules or raised any issue about the validity

---

[57] Amended Verified Complaint, at ¶ 114.

[58] *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (where the arbitration clause provides that arbitration will be conducted under the rules of the AAA, that is clear evidence the parties intended to have an arbitrator determine substantive arbitrability, i.e., a dispute over the scope of an arbitration provision). *See also Farnsworth*, 790 F.3d at 96-97 (challenges to the validity of the specific agreement to resolve the dispute through arbitration … are for the courts to decide, "if timely and properly made." … . "If a party fails to challenge the validity of the arbitration clause itself, the agreement to arbitrate is enforceable and any dispute about the validity of the contract as a whole goes to the arbitrator.") (quoting *Rent-A-Center*, 561 U.S. at 70-72)); *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1148 - 1150 (10th Cir. 2007) (because plaintiff never objected in arbitration to the arbitrability of his claims or raised a question as to the validity of the arbitration agreement, he waived his opportunity to do so and is estopped from raising such issues now).

of the arbitration clause before or during the arbitration proceeding. Plaintiffs have waived the opportunity to question the validity of the arbitration clause, and are estopped from raising these issues now. Therefore, I recommend that the Court dismiss Counts IV and V as untimely.

### Exceptions to Draft Report

Plaintiffs have taken exception to my draft report under Court of Chancery Rule 144. In their exception, Plaintiffs argue that my draft report has deprived Singer of the ability to assert her claims either through arbitration or in this Court. According to Plaintiffs, if the Arbitrator correctly determined that Singer was not a party or other essential person, then Singer is not bound by the arbitration provision in the contract, and has the right to proceed with her claims in this Court. If, on the other hand, Singer is required to arbitrate her claims, then it would be inconsistent to leave the arbitration award intact when Singer was barred from participating in the arbitration proceeding.

Whaley Royce opposes the exception, arguing that Singer was never a party to the contract between Gilmartin and Whaley Royce. The record shows that the arbitration proceeding was initiated by Gilmartin, who was represented by counsel during the arbitration hearing. When Singer appeared at the hearing, she was excluded by the Arbitrator. According to Whaley Royce, Singer had the opportunity to assert her claims at that time, including any claim that she was also a party to the

contract, and the Arbitrator properly exercised his authority to reject Singer's claims. Even if Singer were a third-party beneficiary of the contract, which Whaley Royce explicitly denies, Singer's claims still would be subject to arbitration according to the arbitration clause in the contract between Gilmartin and Whaley Royce. Therefore, Whaley Royce argues that Singer does not have a separate remedy before this Court because Singer exhausted any remedy she might have had when she appeared at the arbitration and the Arbitrator dismissed her.

In reply, Plaintiffs argue that Singer is being denied the guarantee of due process. According to Plaintiffs, if the Arbitrator correctly determined that Singer was not a party to the contract or other essential person, then Singer has the right to proceed with her claims in this Court since she is not bound by the arbitration clause of the contract. The draft report, according to Plaintiffs, deprives Singer of her right to have her claims heard in this Court. Plaintiffs, therefore, propose a simple solution to this dispute, *e.g.*, the Court should vacate the arbitration award and direct the selection of a new arbitrator to hold a new hearing in which Singer would be allowed to participate and to be heard.

Plaintiffs' exceptions are without merit since they represent another attempt to collaterally attack the Arbitrator's decision. Therefore, I am adopting my draft report as my final report, as modified herein. The parties are referred to Court of Chancery

Rule 144 for the process of taking exception to a Master's Final Report.

                              Respectfully,

                              /s/ Kim E. Ayvazian

                              Kim E. Ayvazian
                              Master in Chancery

KEA/kekz