**COURT OF CHANCERY**
**OF THE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Decided: December 7, 2017

Ronald Stoner, Esquire
Ronald Stoner, P.A.
2961 Centerville Road, Suite 350
Wilmington, DE 19808

Ryan P. Connell, Esquire
Deputy Attorney General
State of Delaware Department of Justice
Carvel State Building
820 North French Street, 6th Floor
Wilmington, DE 19801

RE: ***Fraternal Order of Police Delaware Lodge 10 v. State of Delaware***
Civil Action No. 12813-VCMR

Dear Counsel:

This letter opinion addresses Defendant's Motion for Reargument of this Court's October 2, 2017 Letter Opinion denying Defendant's Motion to Dismiss (the "Letter Opinion"). For the reasons stated herein, Defendant's Motion for Reargument is DENIED.

## I. BACKGROUND

The Letter Opinion denied Defendant's Motion to Dismiss Plaintiff's Petition to Enforce an Arbitration Award. The Motion to Dismiss sought "a declaration from this Court that the term 'make whole' as used in the Arbitration Award requires an offset of interim earnings be applied to the amount of back-pay awarded to

Grievant."[1]  I denied the Motion to Dismiss because Defendant could not meet the requirements under the Federal Arbitration Act (the "FAA") to allow the Court to interpret, modify, or remand the Arbitration Award.[2]

In the Letter Opinion, I applied the standard from the FAA.  Defendant did not articulate a standard in its opening brief; Plaintiff argued the FAA applies to this case in its opposition brief; and Defendant did not dispute that the FAA applies in its reply brief or at oral argument.  Furthermore, Defendant did not once reference the collective bargaining agreement (the "CBA") or cite to a single Delaware case applying the standard it now claims applies.

On October 9, 2017, however, Defendant brought this Motion arguing that the FAA does not apply in this case.  Ultimately, Defendant is correct. Nonetheless, I deny the Motion for Reargument because even under the correct standard the outcome remains the same.

---

[1]    Letter Op. 3.

[2]    *Id.* at 4-9.

## II.    ANALYSIS

Under Court of Chancery Rule 59(f), a party may move for reargument within five days after the filing of the Court's opinion.[3]  Reargument will be granted only where the court "overlooked a decision or principle of law that would have controlling effect or . . . misapprehended the facts or the law so the outcome of the decision would be different."[4]

Defendant argues this Court overlooked a principle of law that would have a controlling effect on the case.  That is, Defendant contends that because this dispute involves a collective bargaining agreement, neither the FAA nor the Delaware Uniform Arbitration Act (the "DUAA") applies to this case under Section 5725 of the DUAA, which reads:

> Notwithstanding anything contained in this chapter by word or inference to the contrary, this chapter shall not apply to labor contracts with either public or private employers where such contracts have been negotiated by, or the employees covered thereby are represented by, any labor organization or collective bargaining agent or representative.[5]

---

[3]    Ct. Ch. R. 59(f).

[4]    *Pontone v. Milso Indus. Corp.*, 2014 WL 4352341, at *1 (Del. Ch. Sept. 3, 2014).

[5]    10 *Del. C.* § 5725.

Instead, Defendant argues that the Court should have used the following standard:

> [The Court of Chancery] will not disturb a labor arbitration award unless (a) the integrity of the arbitration has been compromised by, for example, fraud, procedural irregularity, or a specific command of law; (b) the award does not claim its essence from the CBA; or (c) the award violates a clearly defined public policy.[6]

Defendant makes no argument as to the integrity of the arbitration.[7] Defendant does argue that (1) the award violates a clearly defined public policy, and (2) the award does not claim its essence from the CBA. Both arguments fail.

---

[6] *Del. Transit Corp. v. Amalgamated Transit Union Local 842*, 34 A.3d 1064, 1068 (Del. 2011) (alteration in original) (citing *Meades v. Wilm. Hous. Auth.*, 2003 WL 939863, at *4 (Del. Ch. Mar. 6, 2003)). Defendant uses the above language but fails to cite the proper case. Def.'s Mot. for Recons. ¶ 2. The cases Defendant *does* cite use stricter language: "The public policy of this state therefore favors the resolution of labor disputes by arbitration and the award of an Arbitrator must be upheld unless it is based on fraud, gross mistake, or is clearly outside his authority." *Del. State Coll. v. Del. State Coll. Chapter of Am. Ass'n of Univ. Professors*, 1987 WL 25370, at *3 (Del. Ch. Nov. 24, 1987); *Hartnett v. Ahern*, 1988 WL 42956, at *1 (Del. Ch. Apr. 29, 1988) (quoting *id.*).

[7] Issues not briefed are deemed waived. *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999).

## A. Defendant Has Made No Showing that the Arbitration Award Violates a Clearly Defined Public Policy

Defendant first argues that the Arbitration Award violates a clearly defined public policy because "the policy of offset is well established in traditional labor law."[8]

> If an arbitrator construes a collective bargaining agreement in a way that violates public policy, an award based on that construction may be vacated by a court. This exception, though, does not give courts broad discretion to vacate arbitration awards based on general considerations of supposed public policy. Courts may only vacate arbitration awards which *explicitly* conflict with *well-defined, dominant public policy*. A public policy is well-defined and dominant if it may be ascertained from law and legal precedent.[9]

Further, the United States Supreme Court has articulated that "a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective bargaining agreement."[10] Defendant does not, and cannot, contest that favoring arbitration is a clearly defined public policy under

---

[8] Def.'s Mot. for Recons. ¶ 4.

[9] *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1441 (3d Cir. 1992) (citations omitted).

[10] *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 44 (1987).

Delaware law.[11]  Instead, Defendant argues that offsetting back-pay awards is also "a well-established idea."[12]  Even if I assume that the idea of offset qualifies as a "well-defined" public policy, Defendant has failed to make any argument as to how offset in labor arbitration awards is dominant over the public policy of favoring arbitration.  This is especially true where, as here, the Arbitration Award does not "explicitly conflict" with the purported public policy.

The Arbitration Award is silent as to offset.  This silence, however, does not make the Arbitration Award explicitly conflict with the alleged public policy of offset because Defendant failed to request offset from the arbitrator.  As discussed at length in the Letter Opinion, Defendant had "ample opportunity to raise the question of an offset with the arbitrator during the arbitration," explicitly

---

[11]    *See, e.g.*, *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010) ("The public policy of Delaware favors arbitration."); *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 761 (Del. 1998) ("We begin our analysis with the premise that the public policy of Delaware favors arbitration."); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) ("In short, the public policy of this state favors the resolution of disputes through arbitration."); *McLaughlin v. McCann*, 942 A.2d 616, 621 (Del. Ch. 2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)) ("In general, '*any doubts* concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"); *Pettinaro Const. Co., Inc. v. Harry C. Partride, Jr., & Sons, Inc.*, 408 A.2d 957, 961 (Del. Ch. 1979) ("Accordingly, the public policy of this State is now to enforce agreements to arbitrate without regard to the justiciability of the underlying claims.").

[12]    Def.'s Mot. for Recons. ¶ 5.

acknowledged that the remedy to be granted was at issue, and still failed to do so.[13]

This failure by Defendant does not transform offset into the dominant public policy.

In fact, to hold that offset is the dominant public policy, when Defendant merely

failed to request offset from the arbitrator, would vitiate the arbitration process.

Defendant has failed to show that the Arbitration Award explicitly conflicts with

well-defined, dominant public policy.

**B. Defendant Has Made No Showing that the Arbitration Award Does Not Claim Its Essence from the CBA**

Defendant then argues that the Arbitration Award does not claim its essence

from the CBA. To show the award does not claim its essence from the CBA,

Defendant must show "that the award bears no reasonable relationship to the

underlying contract from which it is derived . . . [meaning] it bears no reasonable

relationship to the CBA. If there is any rational construction of the CBA that would

support the arbitrator's award, the award must be upheld."[14]

---

[13] Letter Op. 6. ("Defendant's Statement of the Issue in their post-hearing brief read, '[w]hether the employer has violated the CBA by separating the employee . . . . If so, what shall be the remedy?'" (quoting Emp'r's Post Hr'g Br. 4.)).

[14] *Meades v. Wilm. Hous. Auth.*, 2003 WL 939863, at *6 (Del. Ch. Mar. 6, 2003) (citations omitted).

Defendant argues that "[a]n award without off-set [sic] effectively amounts to an award of punitive damages" and "[t]he idea that a case of employee misconduct where a termination is reduced to a lengthy termination [sic] would support an award of punitive damages is not supported by the agreement." Other than these assertions, absolutely nothing has been presented, nor authority cited, that supports the conclusion that the award is punitive or "bears no reasonable relationship to the CBA."[15] Therefore, I cannot find that the award does not claim its essence from the CBA.

Because the Court overlooked a principle of law that does not have controlling effect on the outcome of this case, reargument is denied.

### III.  CONCLUSION

For the reasons stated herein, Defendant's Motion for Reargument is DENIED.

**IT IS SO ORDERED**.

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

---

[15]     *Meades*, 2003 WL 939863, at *6.